# COURT OF APPEALS.
## January 11, 1916.

## THE PEOPLE v. WALTER WATSON.

### (216 N. Y. 565.)

(1.) MURDER—TRIAL—IMPROPER AND UNWARRANTED STATEMENTS MADE BY A DISTRICT ATTORNEY IN HIS ARGUMENT TO A JURY IN A MURDER CASE CRITICISED AND CENSURED—WHEN SUCH STATEMENTS MAY BE DISREGARDED UPON APPEAL FROM JUDGMENT OF CONVICTION.

Under the statute (Code Crim. Pro. 393) the neglect or refusal of a defendant in a criminal case to testify as a witness in his own behalf does not create any presumption against him, and hence it was improper for the district attorney in his argument to the jury in a murder case where the defendant was not sworn as a witness to call attention to the uncontradicted testimony of a witness for the prosecution, who was the infant son of the defendant and the only one who heard and saw what was done by the defendant and his victim immediately before and after the assault, and then say: " I call your attention to the fact that Thomas Watson's testimony has been absolutely uncontradicted. Now you know that. You saw that and you must be aware of the fact that if there was anything about what Thomas Watson stated that was not true there was a way to contradict his testimony. Now, how can you therefore, conscientiously perform your duties as jurymen right here, and when you go into the jury room and say to yourselves: " We don't believe this or that of Thomas Watson's testimony." * * * Every single part of the testimony in this case falling from the lips of the son prove that (premeditation) unquestionably, and if it were not true, and you gentlemen of the jury cannot sit there and tell me it would not have been contradicted." In so far as it was possible to explain or contradict evidence other than by the defendant's taking the stand, the argument quoted was proper, but so far as it necessarily called upon the jurymen to disregard and disobey the statute, it was improper, and it must be assumed that such statements were intended to be in disregard and defiance of the spirit and letter of the statute.

**(2.) SAME.**

It was also improper to urge as an argument for conviction that "Now there is no sense in burdening the state with this man if he is guilty of murder in the first degree. If you are satisfied that he is guilty of murder in the first degree, there is no sense in doing that," since it was an appeal to the jurymen to take into account the expense of maintaining defendant in a penal institution in determining whether their verdict should be murder in the first degree, which would result in the defendant's death or of some lesser degree of crime which would result in penal servitude.

**(3.) SAME.**

Such statements, although unwarranted and improper, may be disregarded where the guilt of the defendant is reasonably certain, and where the possibility of defendant's substantial rights having been affected is materially lessened by instruction of the trial court expressly directing the jury to disregard such statements.

APPEAL from a judgment of the Kings County Court rendered June 21, 1915, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Patrick E. Callahan* for appellant.

The comments of the prosecuting counsel in his summing up upon defendant's failure to testify were in violation of his right and necessarily prejudicial to defendant. (Davison v. State, 24 S. W. Rep. 414.)

*James C. Cropsey, District Attorney* (*Harry G. Anderson* of counsel), for respondent.

The evidence established beyond a reasonable doubt that appellant killed Elizabeth Watson from a deliberate and premeditated design to effect her death. (People v. Place, 157 N. Y. 584; People v. Kennedy, 159 N. Y. 346; Whart. on Homicide [3d ed.], 232, 234; Leighton v. People, 88 N. Y. 117; People

v. Conroy, 97 N. Y. 62; People v. Constantino, 153 N. Y. 24; People v. Del Vermo, 192 N. Y. 470; People v. Governale, 193 N. Y. 581; People v. Sanducci, 195 N. Y. 361; People v. Serimarco, 202 N. Y. 225.) The assistant district attorney did not transgress proper bounds and was well within his rights in directing the jury's attention to the fact that there was no contradiction of the evidence given by the witnesses for the prosecution. (People v. Schermerhorn, 203 N. Y. 57; Gordon v. People, 33 N. Y. 501; People v. Hovey, 92 N. Y. 554; Brown v. State, 34 L. R. A. 811; People v. Leonardo, 199 N. Y. 432; People v. Fielding, 46 L. R. A. 641; People v. Doody, 172 N. Y. 165; People v. Smith, 180 N. Y. 125; People v. Gillette, 191 N. Y. 107, 121; People v. Seidenshner, 210 N. Y. 341.) The indictment sufficiently charged the crime of murder in the first degree, and the evidence established that the deceased died as a result of the stab wounds inflicted by appellant. (People v. Conroy, 97 N. Y. 62; People v. Giblin, 115 N. Y. 196; People v. Schermerhorn, 203 N. Y. 57; 1 Bishop's New Crim Proc. [2d ed.] 321; 3 id. 1544; Whart. on Homicide [3d ed.], 840; People v. Murphy, 93 App. Div. 383; 179 N. Y. 595; 3 Bishop's New Crim. Proc. 1545; 1 Michie on Homicide, 509; Commonwealth v. Snell, 3 L. R. A. [N. S.] 1019; Code Crim. Pro. §§ 280, 284, subd. 5; People v. Jackson, 111 N. Y. 362; People v. Bressen, 212 N. Y. 578; People v. Kane, 213 N. Y. 260; People v. Vendetti, 215 N. Y. 734.)

CHASE, J.:

The defendant has been convicted of murder in the first degree. The indictment was drawn without the care and consideration in its statements that a matter of such importance should receive. However, the motion to dismiss the indictment on the ground that it does not state facts sufficient to constitute the crime of murder in the first degree was properly denied. It in substance charges that the defendant willfully,

feloniously and of malice aforethought struck Elizabeth Watson with a knife on March 23, 1915, from the effects of which she died on March 26, 1915.

Elizabeth Watson was the wife of the defendant. The evidence taken on the trial was sufficient to sustain the verdict of the jury and it is unnecessary here to repeat the grewsome and unpleasant detail of facts constituting the testimony as it appears in the record. There would be no reason for writing this opinion and one would not be written except to avoid an apparent approval of improper statements made by the assistant district attorney (not the one appearing in this court) who tried the case.

The statute provides that " The defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify does not create any presumption against him." (Code Criminal Procedure, § 393.)

The only person who saw the blows struck with the knife that resulted in the death of Mrs. Watson, or heard what was said, and saw what was done by the defendant and his victim immediately before and after the assault, was their son and oldest child, Thomas Watson. He was necessarily the most important witness at the trial. The defendant was not sworn as a witness. Notwithstanding the statute which expressly states that the defendant's neglect to testify does not create any presumption against him, the assistant district attorney in addressing the jurymen called their attention many times to the fact that the testimony of Thomas was uncontradicted. This was not done as a mere assertion of a fact, but in a way to suggest that contrary to the statute a presumption be indulged in against the defendant because he did not testify in contradiction of the testimony of his son. We quote two statements from the address as follows:

" I call your attention to the fact that Thomas Watson's testimony has been absolutely uncontradicted. Now you know

that. You saw that, and you must be aware of the fact that if there was anything about what Thomas Watson stated that was not true there was a way to contradict his testimony. Now how can you, therefore, conscientiously perform your duties as jurymen right here, and when you go into the jury room and say to yourselves: ' We don't believe this or that of Thomas Watson's testimony.' "

" Every single part of the testimony in this case falling from the lips of the son prove that (premeditation) unquestionably, and if it were not true, and you gentlemen of the jury cannot sit there and tell me it would not have been contradicted."

So far as it was possible to explain or contradict evidence other than by the defendant's taking the stand the argument was proper (People v. Leonardo, 199 N. Y. 432, 446), but, so far as it necessarily called upon the jurymen to disregard and disobey the statute, it was improper. (Code of Criminal Procedure, § 393; Ruloff v. People, 45 N. Y. 213; People v. Rose, 52 Hun, 33; People v. Ryan, 120 App. Div. 275; People v. Friedman, 149 App. Div. 873, 878.) We are compelled to assume that the statements made to the jurymen in this case were intended to be in disregard and defiance of the spirit and letter of the statute.

In such address he also said: " Now there is no sense in burdening the state with this man if he is guilty of murder in the first degree. If you are satisfied that he is guilty of murder in the first degree there is no sense in doing that."

We cannot understand how a prosecuting officer, with any true conception of the high duties of his office, could thus appeal to the jurymen to take into account the expense of maintaining a person in a penal institution as a consideration which should weigh with them in determining whether their verdict should be murder in the first regree, which would result in the defendant's death, or of some lesser degree of crime which would result in penal servitude.

The trial judge left the case to the jury and in doing so stated the law applicable thereto fairly and clearly, and among other things he said: " The defendant has not taken the stand here and under our law you are not to indulge in any inference unfavorable to him from that circumstance." No exception was taken to the remarks of the prosecuting officer quoted, but this court has the power to order a new trial in a capital case when justice requires it, even when no exception has been taken. (Peoples v. Schermerhorn, 203 N. Y. 57, 72; People v. Pindar, 210 N. Y. 191, 197.)

Statements such as those quoted although improper can be disregarded by this court when the guilt of the defendant is reasonably certain. The possibility of the defendant's substantial rights having been affected is materially lessened when the trial court expressly directs the jury to disregard such statements. (People v. Priori, 164 N. Y. 459.)

Counsel for the People in the trial of criminal cases should avoid allowing their zeal to overcome their better judgment and their sense of duty and right. In a case where the guilt of the defendant is doubtful, improper and unjustifiable suggestions tending to a violation of statutory or other rights of the defendant would require this court to order a new trial. Other alleged errors have been called to our attention by the defendant's counsel, but after a careful study of the record we do not think the defendant's substantial rights have been affected. (Code of Criminal Procedure, § 542.)

The judgment of conviction should be affirmed.

HOGAN, J. (dissenting):

Defendant, upon appeal, alleges that he was not convicted under the rules of law after a fair trial. I shall refer to the facts only so far as necessary to present my reasons for the views I entertain.

The defendant was charged with murder in the first degree;

the victim was his wife. The crime was committed in the living rooms occupied by the deceased. The only person present when the crime was committed other than the deceased and defendant was the son of the defendant. As a witness for the People he detailed the facts tending to prove the guilt of defendant. The defendant was not called as a witness in his own behalf, and the effort of his counsel, other than seeking to weaken the evidence presented by the People was directed to an attempt to disclose a lack of responsibility of defendant for the crime of murder in the first degree.

Under the humane provisions of our Constitution no person shall be compelled to be a witness against himself. By the provisions of the Code of Criminal Procedure the neglect or refusal of a defendant to testify as a witness in his own behalf shall not create any presumption against him. In my judgment the rights thus guaranteed to defendant were denied to him. Keeping in mind that the son of the defendant and defendant are the only living witnesses to the crime, attention is invited to the following quotations from the closing argument to the jury of counsel representing the People. In asking the jurors to give credence to the testimony of the son, against whom the counsel for the defendant had cast aspersions, the prosecuting attorney said:

" I call your attention to the fact that Thomas Watson's testimony has been absolutely uncontradicted. Now, you know that. You saw that and you must be aware of the fact that if there was anything about what Thomas Watson stated that was not true there was a way to contradict his testimony. Now, how can you, therefore, conscientiously perform your duties as jurymen right here and when you go into the jury room, and say to yourselves, ' We don't believe this or that, of Thomas Watson's testimony? "

Referring to the defendant and his condition on the day the crime was committed, the following argument was made:

" When he (the defendant) came there on the twenty-second (March) he had come there with the determination and the purpose with a preconceived notion, with a premeditation and deliberation to kill his wife. Every single part of the testimony in this case falling from the lips of the son proves that unquestionably, and if it were not true, and you gentlemen of the jury, you cannot sit there and tell me it would not have been contradicted."

One Mary Dunleavey was called as a witness by defendant and was asked to state what was said to her by the defendant on the 16th day of March, some six days before the crime was committed. Objection to the evidence made by the prosecution was sustained, and to the criticism made by counsel for the defendant relative to the same the prosecuting officer said: " Mr. Callahan objected and said that I was unfair on my part to have objected to having Mrs. Dunleavey state what Mr. Watson said to her. Why, gentlemen of the jury was that unfair on my part? Why should I be interested in what Mrs. Dunleavey heard from the lips of someone else? Why should I take the conversations second hand? Why from Mrs. Dunleavey? You know just as well as I do that if there was any conversation between Mrs. Dunleavey and Mr. Watson there was a method of proving what their conversation was. That was the reason I objected."

Replying to a suggestion made by counsel for defendant to the jury that the evidence of defendant's son need not be taken wholly and solely by the jury, and that the jury had a right to disregard it, the prosecuting attorney said: " We have got testimony, gentlemen of the jury, which fell from the lips of a bright young man, which on the record remains uncontradicted."

Again, " I said before, and I say it now finally: that there could be no case presented to a jury of twelve men with testimony so convincing, so absolute of the guilt of a defendant

of murder in the first degree as is the testimony in this case; because all you have is the testimony of the boy and the testimony of other witnesses, and the testimony which is material in this case, which goes to the crux of the case, stands absolutely uncontradicted. And that you have a duty to perform you know. You cannot perform it conscientiously if you are going to brush aside testimony which is absolutely uncontradicted."

In view of the fact that the son and defendant are the only living witnesses to the crime and as to what transpired at the time of and immediately previous to and subsequent to the commission of the crime, I am at a loss to understand what more forceful language could have been employed by the trial assistant district attorney to emphasize the failure of the defendant to take the witness stand in his own behalf. By whom was it possible to contradict the testimony of the son save by the defendant? The jurors to whom the remarks were addressed understood the effect of the language so frequently employed. It was less difficult to comprehend than was the distinction in the degrees of murder. True, counsel for defendant did not interrupt or make objection to the statements quoted. This being a capital case it is the duty of this court to consider the error irrespective of objection or interruption.

The trial justice did not interfere with the conduct of the prosecuting attorney or rebuke him for his continued reference to the failure of the defendant to take the witness stand. In the main charge to the jury the trial justice did not even refer to the rule of law that no unfavorable inferences were to be indulged in by the jury against the defendant by reason of his failure to take the witness stand, and not until the trial justice was asked by counsel for defendant to charge the jury that it was for that body to pass upon the credibility of the testimony of the son Thomas did the justice charge the above rule. The prejudicial remarks of the trial assistant were fresh in the minds

of the jurors unrebuked by the trial justice, and as stated in the prevailing opinion " were intended to be in disregard and defiance of the spirit and letter of the statute." This appeal presents a case where the trial assistant district attorney has, as stated, intentionally made statements to the jury which were intended to be in disregard and defiance of the spirit and letter of the statute. Such statements were also made in defiance of the admonitions of this court in several criminal cases where reversals of convictions were had by reason of less glaring violations by prosecuting attorneys, which decisions we must assume were known to the trial attorney in this case. Was this court in error when it reversed the judgments to which I shall call attention? If so, why not expressly overrule such decisions, to the end that the bench and bar may definitely understand the limitations, if any, which are to prevail on the trial of future cases? If this court intended by its former decisions to lay down a rule of law for the protection of the liberty of the individual and the guidance of the courts as well as prosecuting attorneys, why not enforce it in all cases? Condemnation of the methods adopted in this case does not explain why this court reversed judgments in former cases for like conduct on the part of trial attorneys. In view of what has been written by this court, that however strong the evidence against a defendant may be, if he did not have a fair trial the judgment of conviction should be reversed and a new trial had according to law, I am unable to agree that in the case at bar " when the guilt of the defendant is reasonably certain " the error may be disregarded. I believe that the repeated decisions of this court should be followed and respected, for only by adherence to the same can the liberty and property rights of the individual be secured. A defendant charged with crime is entitled to a trial according to the law as defined by the legislature and the courts. The appellant was not awarded a fair trial and should not be condemned until such

time as he has been convicted in accordance with the rules of law.

In People v. Wolf (183 N. Y. 464, 472) the defendant was convicted of the crime of abduction. Remarks made by the assistant district attorney during the opening of the case were objected to from time to time, and are set out at length in the case as reported. The trial justice, in his charge, directed the jury to disregard any statements of the district attorney or counsel for the defense that were not borne out by the evidence in the case and to determine the case upon the evidence submitted by the court and upon such evidence alone. The court, through Judge VANN, said:

" An unfair trial, especially in a criminal case, is a reproach to the administration of justice and casts grave responsibilty not only upon the prosecuting officer but also upon the trial judge. However strong the evidence against the defendant may be, if she did not have a fair trial, as shown by the rulings of the court subject to proper objections and exceptions, the judgment of conviction should be reversed and a new trial ordered so that she may be tried according to law. We have repeatedly laid down the rule governing prosecuting officers in addressing the jury and to govern trial judges also in their duty relating to the subject. We have repeatedly admonished both, the former at times with severity, and the latter more mildly, not to depart from that rule, but our admonitions have not always been regarded, although they were followed by a reversal of the judgment involved, founded solely on the improper remarks of the prosecuting officer and the failure of the trial judge to do his duty in reference thereto. (People v. Mull, 167 N. Y. 247; People v. Fielding, 158 N. Y. 542.)

" A fair trial is a legal trial, or one conducted in all material things in substantial conformity to law. The defendant did not have a fair trial, for the trial assistant, who did not argue the

appeal before us, in his opening address to the jury stated ominous and startling facts which he should have known he could not prove. The trial judge allowed and sanctioned continuous departures from the law by the assistant district attorney, although he should have known that it was his duty to prevent them, even of his own motion without suggestion from the defendant's counsel. It was his duty not only to warn the district attorney to desist, but also, if he continued, to rebuke him and punish him for contempt if necessary to prevent further infraction of the law."

In People v. Fielding (158 N. Y. 542, 546, 550) the defendant was indicted for the crime of consenting to and conniving at the auditing or allowance of a false or fraudulent bill or claim against the city of Brooklyn. The single question presented to this court was raised by the extract in the appeal book of the summing up of the district attorney, the principal features of which are set forth in the case as reported. In charging the jury, in that case, the court said that the remarks about popular clamor and the burden of taxpayers and other matters discussed by the district attorney were to be disregarded by the jury. This court, again writing by Judge VANN, said:

"We do not wish to express any views which would restrict counsel in fair argument, comment or appeal. We object, however, to the assertion by the learned district attorney of facts not proved, to his inflammatory appeals to passion and prejudice, and to his threat to the jury of popular denunciation, all under the sanction of the trial court. If the record in this case is sustained by the deliberate judgment of the court of last resort, it is difficult to see the limit to intemperate language, unproved assertion or pernicious appeals on the part of counsel for the prosecution, except their own sense of propriety. The law, in our judgment, does not thus leave

an accused person, presumed to be innocent until proved to be guilty, bound and helpless in the hands of his accuser."

Judge VANN referred to numerous cases in various jurisdictions bearing directly upon the subject under consideration, and then said:

" In a case that is free from doubt upon the merits, the appellate courts disregard errors of the trial court, even in a criminal case, when it is reasonably certain that they could not have affected the result. A proposition is reasonably certain when it is supported by the strong probabilities, but here the strong probabilities are that the errors did affect the result. The average man cannot read the eloquent but inflammatory language of the district attorney without being impressed by it, and it is safe to presume that the effect would be heightened by hearing those words spoken with animation and enthusiasm under the exciting circumstances surrounding an important criminal trial. The jury might be told by the court to forget them, but could they forget them? They might be told to disregard them, but how can we be certain that they did disregard them? Moreover, some of the most objectionable language was not alluded to by the court in its charge, and instructions to the jury do not always neutralize, either as a matter of law or fact, the effect of improper remarks in their presence. (People v. Corey, 157 N. Y. 332, 346; Brooks v. Rochester Ry. Co., 156 N. Y. 244, 252; People v. Hill, 37 App. Div. 327; Swan v. Keough, 35 App. Div. 80.) "

In People v. Mull (167 N. Y. 247) the defendant was convicted of murder in the first degree. This court held, Judge LANDON writing, that the evidence was ample to sustain the verdict, and the exceptions other than those taken to portions of the closing address to the jury made by the district attorney did not require reversal. The character of the address of the district attorney is referred to in the reported case, and this court reversed the judgment of conviction for such error,

approving the rule laid down in People v. Fielding (158 N. Y. 542) and re-affirmed the doctrine there stated.

In People v. Conrow (200 N. Y. 356, 369) the defendant was convicted of murder in the first degree. Upon the trial, the district attorney upon cross-examination of defendant, quoted in detail incriminating statements and assertions made in the presence of defendant by an accomplice, which were subsequently stricken from the record by the court and the jury instructed not to consider the same. This court held that in a capital case the evidence thus erroneously received was calculated to affect the jury in determining the guilt or innocence of the defendant, notwithstanding the fact that it was at least in form removed from its consideration, and under such circumstances it was the duty of this court to give the defendant a new trial. In that case, Judge CHASE, writing, said:

"The statements and charges of Monat must have been repeated to the jury for the express purpose of influencing it in its deliberations upon the question of the defendant's guilt.

"It is not always an easy thing for a juryman to eliminate from his memory the effect of damaging statements made in his presence. (Brooks v. Rochester Ry. Co., 156 N. Y. 244; People v. Corey, 157 N. Y. 332; People v. Fielding, 158 N. Y. 542.) In this case where the defendant's life is involved, we are unwilling to take the responsibility of saying that the statements and charges of Monat erroneously received, although stricken out, did not affect the result.

"It is unfortunate that incompetent testimony, even when peculiarly calculated to materially influence a jury, is so frequently urged upon its attention in criminal cases when slight care given to its consideration would not only reveal its incompetency but the danger and wrong in persisting in its consideration."

In People v. Becker (210 N. Y. 274) the error complained of by the appellant upon the subject of a fair trial had reference

to the conduct of the court towards counsel and the conduct of the prosecuting officer in charge in his opening address to the jury. When the Becker case was before the court upon the second appeal (215 N. Y. 126, 133) Chief Judge BARTLETT wrote: " The first judgment of death against the defendant was reversed because he did not have a fair trial." Upon the first appeal (210 N. Y. 274, 311) Judge HISCOCK wrote: " The fundamental demand of our law is that the accused shall have a fair trial, and that if that right has been infringed, not in respect to mere technicalities but in substantial matters, and however undesignedly, he shall have another opportunity to meet his accuser and establish his innocence. * * * He (the defendant) never had a fair chance to defend his life and it would be a lasting reproach to the state if under those circumstances it should exact its forfeiture. (People v. Wood, 126 N. Y. 249, 269; People v. Barberi, 149 N. Y. 256; People v. Davey, 179 N. Y. 345, 347; People v. Wolf, 183 N. Y. 464; People v. Freeman, 203 N. Y. 267, 271; People v. Kinney, 202 N. Y. 389, 397.) "

Even in civil actions, statements made by counsel which tend to arouse sympathy or to create prejudice in the minds of jurors constitute error requiring a new trial, even in cases where the court instructs the jury to disregard such statement. (Halpern v. Nassau El. R. R. Co., 16 App. Div. 90; Bagully v. Morning Journal Association, 38 App. Div. 522.)

An examination of the record discloses in connection with the long line of decisions of this court from the early days to and including the Becker case, that this defendant has not had a fair trial. If he has not been legally tried and convicted it is the duty of the court as I construe the decisions to grant a new trial to the end that proof may be presented in the regular way and the guilt or innocence of the defendant be determined according to the rules of law.

I vote for a reversal of the judgment of conviction and for a new trial.

WILLARD BARTLETT, Ch. J., COLLIN, SEABURY and POUND, JJ., concur with CHASE, J.; HOGAN, J., reads dissenting opinion; HISCOCK, J., absent.

Judgment of conviction affirmed.