**Application for Writ of Habeas Corpus by David COLEMAN, Petitioner,**

v.

**Wilfred L. DENNO, as Warden of Sing Sing, and Edward Silver, District Attorney, Kings County, Respondents.**

United States District Court
S. D. New York.
Nov. 7, 1963.

Jack L. Kroner, Stanley J. Levy, Frederick C. Stern, Martin A. Garbus, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, for respondent, Wilfred L. Denno, as Warden of Sing Sing, Stephen N. Rubin, Deputy Asst. Atty. Gen. of the State of New York, of counsel.

Edward S. Silver, Dist. Atty., Kings County, pro se, William I. Siegel, Asst. Dist. Atty., of counsel.

FREDERICK van PELT BRYAN, District Judge.

David Coleman, confined in Sing Sing Prison under a death sentence following a conviction by a jury of murder in the first degree in the County Court of Kings County, New York, has petitioned this court for a writ of habeas corpus.

Upon his appeal as of right to the New York Court of Appeals, the conviction was affirmed. People v. Coleman, 10 N.Y.2d 765, 219 N.Y.S.2d 612, 177 N.E.2d 53 (1961). Coleman then moved for reargument and for assignment of counsel to represent him on reargument. This motion was granted. 10 N.Y.2d 815, 227 N.Y.S.2d 520, 178 N.E.2d 234 (1961). Reargument was denied but the remittitur was amended to state that a federal question had been passed upon as to violation of Coleman's right under the Fifth and Fourteenth Amendments to the United States Constitution because of certain remarks of the prosecution in summation which will be referred to later here. The Court of Appeals, however, found no such violation. 10 N.Y. 2d 1008, 224 N.Y.S.2d 686, 180 N.E.2d 265 (1961).

Coleman then applied to the Court of Appeals for assignment of counsel to aid him in preparing a petition to the Supreme Court for a writ of certiorari. This application was denied on January 11, 1962, and a motion for reconsideration was denied on February 22, 1962. 11 N.Y.2d 769, 227 N.Y.S.2d 19, 181 N.E.2d 763.

In the meantime Coleman, advised by volunteer counsel, had applied to the Supreme Court for writ of certiorari on February 14, 1962. The application sought (1) to review the order of the New York Court of Appeals of January 11, 1962 denying Coleman's application for assignment of counsel to prosecute the writ of certiorari, and (2) to extend his time to review the affirmance of his conviction until the question of assignment of counsel had been resolved.

On March 19, 1962 the Supreme Court denied the petition for writ of certiorari without comment. Coleman v. State of New York, 369 U.S. 826, 82 S.Ct. 843, 7 L.Ed.2d 791.

Thereupon Coleman applied to this court for a writ of habeas corpus based solely upon the failure of the New York Court of Appeals to assign counsel to represent him during the post-appellate period between the affirmance of his conviction and his execution, or other final disposition of his case.

This petition was denied by Judge Sugarman on May 25, 1962. Judge Sugarman expressly stated that the denial was limited to the single issue of Coleman's right to counsel in the post-appellate period and was "not addressed to any other basis which petitioner may have for a writ of habeas corpus in this court, including, but not limited to, alleged prejudicial statements by the District Attorney in summation, which deprived petitioner Coleman of due process in his trial in the County Court of Kings County." Coleman v. Denno, 205 F.Supp. 510, 514–515 (S.D.N.Y.1962).

The denial of the writ by the District Court was affirmed by the Court of Ap-

peals, 313 F.2d 457 (2 Cir. 1963), and certiorari was denied, 373 U.S. 919, 83 S.Ct. 1310, 10 L.Ed.2d 418 (1963). Both in the Court of Appeals and upon certiorari the sole question presented related to the refusal to assign counsel to petitioner in the post-appellate period.

After the Supreme Court had denied certiorari on May 13, 1963, the New York Court of Appeals, on motion of the District Attorney of Kings County, fixed the week beginning June 24, 1963 as the new date for execution of Coleman's death sentence.

The petition for the writ of habeas corpus now before me followed and a stay of execution, which is presently in force and effect, was duly issued by this court pending hearing and determination of the petition.

The present and second application for a writ of habeas corpus is on the sole ground that Coleman's constitutional rights against self-incrimination under the Fifth and Fourteenth Amendments to the Federal Constitution were violated at his trial in the State Court. He contends that remarks made by the prosecutor in summation constituted unfair comment to the jury on his failure to take the stand in his own defense and that the effect of such comments was compounded by statements made by the trial judge immediately thereafter in the presence of and to the jury.

Respondent urges that the petition for a writ should be denied (1) because Coleman waived the contentions he now asserts by failing to raise them on his previous application to this court for a writ, (2) because the statements of the prosecutor and the court did not in fact constitute prejudicial comments on Coleman's failure to take the stand, and (3) because under the Supreme Court cases as they presently stand, the privilege against self-incrimination under the Fifth Amendment to the Constitution is not made applicable State's courts by the Fourteenth Amendment.

There is no merit to the contention that Coleman is barred from asserting the grounds on which he now seeks relief because of the previous writ of habeas corpus denied by Judge Sugarman. The contention that he was deprived of his constitutional right against self-incrimination by the conduct of the prosecutor and the trial judge is being considered for the first time in this court by his present petition for a writ. Under the standards laid down in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), viewed in the light of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), it is plain that although prior applications for federal collateral relief have been made a petitioner is not barred from applying for such relief again if a different ground is presented by the new application, or if the same ground was earlier presented but not adjudicated on the merits.

Judge Sugarman, in denying Coleman's previous application for a writ, made it abundantly clear that he was considering only the issue as to failure to assign petitioner counsel during the post-appellate period, and that the denial of the petitioner's application was not based on any other grounds for a writ which petitioner might have, including the grounds now raised. 205 F.Supp. 510, pp. 514–515.

The issues on appeal from Judge Sugarman's decision and on certiorari were similarly limited. There is thus no question that a ground entirely different from those previously raised or passed upon is presented on this application. Coleman is not barred from maintaining his present petition.

I turn then to the merits of the application.

Petitioner was charged with strangling a 77 year old woman during the course of a burglary, after raping her.

At the trial, which resulted in his conviction, petitioner was represented by competent counsel. There is no need to discuss the evidence presented by the

prosecution in detail except to say that it was ample to support the conviction. It included an oral and a written confession made to the police about which no question is raised here.

Coleman, after being fully advised of his rights,[1] elected not to testify on his own behalf and did not call any witnesses. However, his counsel read to the jury portions of a question and answer statement which Coleman had made to an assistant district attorney shortly after he made his confession to the police which had not been offered in evidence by the prosecution and which defense counsel evidently deemed to be exculpatory. In this statement Coleman admitted that he had entered the deceased's apartment, had stolen a wallet, had slapped and tied up the deceased, and had had intercourse with her, though with her consent. He denied strangling her and claimed that when he left the deceased she was still alive. The fact was that she was not found dead until three days after the burglary. The defense then rested. The prosecution did not read the balance of this statement to the jury.

Apart from the alleged comments concerning petitioner's failure to take the stand, it is not contended that the trial was unfair and there is no basis for such a contention.

Coleman's contention on this application is based on the following which occurred during the course of the prosecutor's summation:

Mr. Baumann, the Assistant District Attorney:

"Gentlemen, there are just a few things more that I would like to say to you before I make my concluding remarks. I made some notations here that I could follow during my summation, and, of course, Mr. Goldstein, counsel for the defendant, called for the statement made to the district attorney on the night he made the confession, and,

in substance, he felt that this is something that the district attorney should have brought forth.

"The fact of the matter is that I had a signed confession by this defendant, and I had the detectives testify and Mr. Davies re-enact the whole crime. So that there comes a time when you are just accumulating the testimony and lengthening the trial.

"But, just the same, I had a right to exercise my prerogative as to how I would conduct this trial, and I felt I would save this statement for cross examination, if and when—

"The Court: Wait a minute, please.

"Gentlemen, I will instruct you to disregard the district attorney's statement. I am speaking with forthright language—or any implications concerning the last remark. You are to disregard it completely, anything about cross examination.

"You just stop right there, Mr. District Attorney, or I will declare a mistrial. Did you hear what I said?

"Mr. Baumann: I did.

"The Court: You better follow my admonition.

"Just disregard why he didn't put the statement in in his direct case.

"Gentlemen, I will poll each one of you, and when I say 'disregard it,' I mean disregard it.

"The Court: Mr. Foreman, juror No. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and the two alternates; and everybody has nodded in the affirmative.

"Remember what I told you.

"Mr. Baumann: I heard you, sir."[2]

The defendant's counsel made no protest or comment concerning this passage. Nor did he move for a mistrial. The court gave the following charge on

1. R. p. 282.

2. R. pp. 310–13.

the subject of defendant's failure to take the stand:

"This defendant didn't take the witness stand and offer testimony in his own defense. The law with reference to that feature of the case is, as follows: He had a right to take the witness stand if he so desired, but his failure or neglect or refusal to take the witness stand doesn't and mustn't create any unfavorable inference against him. The same applies to witnesses in behalf of the defendant." [3]

No additional request to charge on this subject was made by defense counsel and no exception was taken to the charge as given.

The portion of the prosecutor's remarks to which petitioner takes particular exception is the sentence which was abruptly interrupted by the court reading as follows: "But, just the same, I had a right to exercise my prerogative as to how I would conduct this trial, and I felt I would save this statement for cross examination, if and when——."

What occurred during the prosecutor's summation must necessarily be viewed against the background of other occurrences during the trial. During summation defense counsel stressed the fact that, while the People had placed in evidence the allegedly voluntary written confession taken by the police and signed by Coleman, it had failed to offer the additional statement taken by the Assistant District Attorney. Defense counsel had read portions of that statement to the jury himself on the theory that they were exculpatory. In an attempt to discredit the confession made to the police defense counsel said in summation [4]:

" * * * This statement in the District Attorney's office, which was taken by the district attorney——I

asked for its production today; and what is significant about it is this, that when the assistant district attorney asked this defendant questions, he didn't tell the district attorney what he told—what the police tell us he told them. Why? * * "

Apparently because of this the prosecutor, in his own summation, felt called on to explain why he had not introduced the full statement taken by the District Attorney.

Coleman contends here that the prosecutor's remarks in summation which have been quoted were adverse comments on his failure to take the stand and were highly prejudicial. The prejudicial effect, he says, was emphasized by the court's immediate reaction to such remarks and its imperative instructions to the jury to disregard completely "anything about cross examination" or as to "why he didn't put the statement in in his direct case," coupled with the polling of the jury as to whether they would follow the court's instructions. Coleman says that this combination of circumstances violated both his right to a fair trial in the state court under the due process clause of the Fourteenth Amendment and his Fifth Amendment privilege against self-incrimination which he contends should be held to have been extended to the states by the Fourteenth Amendment.

Both Article I, § 6, of the New York State Constitution and the Fifth Amendment to the Federal Constitution provide, in identical language, that no person "shall be compelled in any criminal case to be a witness against himself." Both by New York State and Federal statute it is further provided that a defendant may testify as a witness on his own behalf but that his failure to do so does "not create any presumption against him." [5]

3. R. p. 363.

4. R. pp. 292–3.

5. New York Code of Criminal Procedure, § 393:
   "Defendant as witness
   "The defendant in all cases may testify as a witness in his own behalf, but his

In New York it is well-settled that the prosecutor has no right to make even an indirect allusion to the fact that the accused has failed to avail himself of his right to testify on his own behalf under the New York statute, much less to make a direct reference to the fact that he has not taken the stand. Ruloff v. People, 45 N.Y. 213 (1871). Indeed, it was indicated in that case that the trial judge might not make any such allusion either except when necessary to counteract improper remarks of the prosecutor, though later decisions have modified that rule and "it is now proper for a trial judge to instruct a jury that it must obey the command of the statute and not indulge in any presumption against an accused because of his failure to take the witness stand." People v. Forte, 277 N.Y. 440, 443, 14 N.E.2d 783, 785 (1938). See also People v. Hayes, 140 N.Y. 484, 496, 35 N.E. 951, 23 L. R.A. 830 (1893); People v. Hoch, 150 N.Y. 291, 44 N.E. 976 (1896).

As was said in Ruloff v. People, supra, 45 N.Y. at page 222:

"* * * If, with this statute in force, the fact that he [the accused] is not sworn can be used against him, and suspicion be made to assume the form and have the force of evidence, and circumstances, however slightly tending to prove guilt, be made conclusive evidence of the fact, then the individual is morally coerced, although not actually compelled to be a witness against himself. The constitution, which protects a party accused of crime from being a witness against himself, will be practically abrogated."

But the fact that some such allusion has been made by the prosecutor, while it is improper, does not necessarily require the granting of a mistrial or void a conviction. The controlling question is whether or not the accused was prejudiced by such an allusion so that the jury's determination as to the defendant's guilt or innocence may have been influenced or affected by it. Ruloff v. People, supra; People v. Watson, 216 N.Y. 565, 111 N.E. 243 (1916); People v. Maimone, 9 A.D.2d 780, 193 N.Y.S.2d 90 (2d Dept. 1959).

Thus where such an allusion merely permitted an inference to be drawn by the jury to the prejudice of the defendant and was not a direct statement concerning the effect of defendant's failure to take the stand, the error may be cured by a subsequent charge by the court that the accused had the privilege not to take the stand and that no presumption or inference could be drawn from his failure to do so. Ruloff v. People, supra. Even where the prosecutor's remarks went so far as to suggest, in defiance of the spirit and letter of the statute, that a presumption may be indulged in against a defendant because he did not testify, it has been held that the error could be cured by a proper charge by the trial judge on the subject where the People's case was not based solely on circumstantial evidence. People v. Watson, supra.

On the other hand, where statements by the prosecution permitting unfavorable inferences to be drawn from the failure to testify are permitted to stand unexplained and unchallenged, and the court does not take appropriate steps to correct my misapprehensions in the minds of the jury that may arise from them, the conviction necessarily must fall. People v. Minkowitz, 220 N.Y. 399, 115 N.E. 987 (1917); People v. Leavitt, 301 N.Y. 113, 92 N.E.2d 915 (1950). This is, of course, also so where the charge itself erroneously states the rule

neglect or refusal to testify does not create any presumption against him."
18 U.S.C. § 3481:
"Competency of accused
"In trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him."

and leaves it open for the jury to draw inferences unfavorable to the accused from his failure to testify. People v. Forte, supra.

Moreover, the remarks of the prosecutor may be so direct and egregious as to create prejudice in the minds of the jury which cannot be cured merely by a proper charge on the subject. Thus where "[d]espite the exceptions taken by defendant's counsel, the Trial Judge ignored the District Attorney's repeated accentuation of the defendant's failure to testify," the trial was held to be so unfair as to require reversal on that and other grounds despite the fact that the trial judge gave a standard and correct charge on failure to take the stand. People v. Hetenyi, 304 N.Y. 80, 106 N.E. 2d 20 (1952).

■■ Thus, in New York a mere indirect allusion to failure to take the stand is not in itself grounds for invalidating a guilty verdict if the trial judge has taken appropriate steps to rectify any misapprehension which may have arisen in the minds of the jury. Indeed, it is "the duty of the court promptly to interrupt a prosecuting counsel who should so far forget himself and the duties of his office as to attempt to make use of the fact in any way to the prejudice of a person on trial." Ruloff v. People, supra, 45 N.Y. at p. 222. The question is whether under all the circumstances an improper allusion of this character affected the fundamental fairness of the trial or might have influenced the jury against the accused.

■ Judged by these standards it cannot be said that the remarks of the prosecutor complained of in the case at bar, when taken in conjunction with what was said by the trial judge, affected the fairness of the trial in any degree or could be said to have prejudiced the jury against Coleman because of his failure to testify. As I have indicated, the prosecutor's comments must be viewed against the background of the defendant's summation and of his reliance on the alleged exculpatory statements in

Coleman's confession to the district attorney. Against this background it is doubtful whether the prosecution's remarks, though plainly they should not have been made, rose to the level of allusion to or comment upon defendant's failure to take the stand so as to authorize the jury to draw any inferences unfavorable to the defendant therefrom.

But even if they did they were of an indirect and remote nature. The trial judge, as was his duty, took prompt and decisive action to correct any misapprehensions in the minds of the jury, even though no objection to the prosecutor's remarks had been made by the competent counsel representing the defendant. Moreover, the trial judge correctly charged the jury on the subject of defendant's failure to take the stand but did not make what might well have been the mistake of reemphasizing the specific incident which took place during summation by referring to it again in his charge. There was no exception taken to the charge. Nor, indeed, was the point now pressed ever raised at the trial.

The case against Coleman was not based solely on circumstantial evidence. It was supported by a detailed reenactment of the crime by Coleman, testified to by a disinterested witness. A written confession made by Coleman to the police was also read to the jury, to say nothing of the so-called exculpatory statement read by defense counsel which deeply involved him. The evidence, taken as a whole, overwhelmingly indicated that Coleman was guilty as charged.

There are no grounds for invalidating the conviction under New York law.

Nor would the result be any different in the federal courts. There, as in New York, it is well recognized that an indirect allusion to the defendant's failure to take the stand may be cured by proper action of the trial judge and that the basic question is whether or not the defendant has been prejudiced or whether any element of unfairness has crept into the trial. Johnson v. United States, 318

U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); United States v. Wright, 309 F. 2d 735, 738 (7 Cir. 1962); Knowles v. United States, 224 F.2d 168, 170 (10 Cir. 1955); United States v. Di Carlo, 64 F.2d 15, 18 (2 Cir. 1933). See also and compare Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961); De Luna v. United States, 308 F.2d 140, 151 (5 Cir. 1962).

Thus, there is no merit to Coleman's contentions here since there was no unfairness or prejudice to him either under the New York or federal standards. There is no basis for his claim that his rights to due process under the Fourteenth Amendment in the State Courts were violated. Nor would there be any violation of Coleman's rights under the Fifth Amendment, even if it is assumed that he is correct in his contention that the Fifth Amendment was extended to the states by the Fourteenth and that Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903 (1947) holding to the contrary, is no longer good law in the light of recent developments.

What has been said, however, makes it unnecessary to pass on that contention or to speculate on what the Supreme Court may decide in Malloy v. Hogan, in which certiorari was recently granted 373 U.S. 948, 83 S.Ct. 1680, 10 L.Ed.2d 704 (1963), and in which that question is raised by the parties.

The petition for a writ of habeas corpus is therefore in all respects denied.

Since it cannot be said that the questions raised in this capital case are wholly frivolous, a certificate of probable cause will issue pursuant to 28 U.S.C. § 2253 to enable the Court of Appeals to review the denial of the writ. The stay of execution previously granted will be extended pending the determination of any appeal to the Court of Appeals, or, in the event of failure to appeal, until the expiration of the time within which such an appeal could be taken.

It is so ordered.