UNITED STATES of America ex rel. Salvatore D'AMBROSIO, Relator-Appellant,

v.

Hon. Edward M. FAY, as Warden of Green Haven Prison, Stormville, New York, Respondent-Appellee.

No. 549, Docket 29747.

United States Court of Appeals Second Circuit.

Argued June 21, 1965.

Decided Aug. 17, 1965.

Certiorari Denied Nov. 15, 1965.

See 86 S.Ct. 301.

John C. Lankenau, New York City, for relator-appellant.

Barry Mahoney, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen. of State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Brenda Soloff, Deputy Asst. Atty. Gen., on the brief), for respondent-appellee.

Before MOORE and ANDERSON, Circuit Judges, and LEVET, District Judge.

ANDERSON, Circuit Judge.

On January 4, 1962 in the County Court of Kings County, New York, a jury returned a verdict of guilty against the relator-appellant Salvatore D'Ambrosio for attempting to bribe two police detectives with the intention of influencing them in carrying out their official duties. On February 19, 1962 D'Ambrosio was before the court for sentencing. At that time he and his counsel were presented with a second offender information which had been filed by the District Attorney. After a hearing thereon the court adjudged D'Ambrosio a second offender and sentenced him to imprisonment for five to ten years. This judgment was affirmed by the Appellate Division on July 1, 1963 (19 App.Div.2d 777, 242 N.Y.S.2d 625), and leave to appeal to the New York Court of Appeals was denied by Judge Fuld of that court on October 26, 1963. The Supreme Court of the United States denied certiorari May 18, 1964 (377 U.S. 936, 84 S.Ct. 1342, 12 L.Ed.2d 300). The petition for habeas corpus to the United States District Court for the Southern District of New York was denied September 22, 1964, and it is from the denial of that petition that D'Ambrosio now appeals. We affirm the judgment below.

Two grounds of appeal are claimed as violations of the Fourteenth Amendment to the Federal Constitution: first, that in the course of his argument before the jury in the state court, the prosecutor improperly commented upon D'Ambrosio's failure to take the witness stand and testify on his own behalf; and, second, that he was improperly sentenced as a second offender because (a) he did not receive adequate notice of the second offender charge and (b) the trial court did not warn him of the increased penalties to which he could be subject as a second offender.

The first ground claimed stems from a statement made by the prosecutor at the beginning of his argument, which immediately followed the summation for the defendant. The remarks referred to by the appellant are the following:

"I am now going to speak without notes. My summation is in here, and I would be lying if I told you that I didn't spend a substantial part of all last night studying it, but it is out the window now; it is dead, completely dead, because, in order to draw my summation, I had to rely

on the only evidence in the case, that which I had, and I had only one choice; either Mr. D'Ambrosio would admit that this was his money, and he had passed it, which he obviously has not—

Mr. Brodsky: If your Honor please, I move for the withdrawal of a juror and the declaration of a mistrial.

The Court: Motion denied.

Mr. Brodsky: Exception.

Mr. Schmier: —or the only other alternative, if it is not his money and he didn't pay this bribe and he is innocent, which he says he is, and which he is presumed to be, and which we all respect; I had to decide to sum up to you and decide whose money this is, because that $1100 belongs to somebody. This is somebody's $1100. So I drew my summation, and I guessed that Mr. Brodsky, in summing up, would yell, 'Frame up'; and I was right, but I don't get any credit for that because he had no other alternative. This $1100 belongs to somebody. His client, he claims, is innocent."

The appellant asserts that in hearing this statement the jury must naturally and necessarily have concluded that the prosecutor was making express reference to the failure of the defendant to take the witness stand in his own behalf. We disagree. In the context in which the remark was made, it is apparent that the prosecutor was making a reference only to the accused's plea of "not guilty" and defense counsel's theory of the case which had just been presented in the summation for the defendant.

The statement objected to was a part of the prosecutor's description of what went through his mind at a late hour the night before in planning his summation. This was largely irrelevant and not the best advocacy and was an effort to enlist sympathic consideration from the jury by telling them what great difficulty he faced in trying to anticipate the nature of the defense. It must also be borne in mind that, at the time he was engaged in the train of thought which he was describing, he had not yet finished putting in the main case for the People and did not know whether the defendant was going to take the stand or not. His reference to the "only evidence in the case, that which I had * * *" plainly at that stage meant only the People's own evidence. It must have been quite clear to the jury that the prosecutor was doing no more than to recount his late hour speculations about possible theories of defense which might be advanced. In using the words principally objected to "either Mr. D'Ambrosio would admit that this was his money, and he passed it, which he obviously has not—," it is unlikely in the context of these words, that the jury would either naturally or necessarily conclude that the prosecutor was talking about a failure by Mr. D'Ambrosio to take the witness stand.

On the contrary, they would have understood that he was pondering the strategy which would be adopted by the defense at the close of the People's main case, when either the strength of the People's case might have persuaded the defense not to contest further, or the accused might continue to assert his innocence on all elements of the offense and claim that he had been framed. If the accused were to concede the charge against him, it is highly unlikely that he would take the stand to testify about it. Instead, he would have entered a change of plea from "not guilty" to "guilty." To interpret the words " * * * Mr. D'Ambrosio would admit that this was his money and he had passed it, which he obviously has not—" as an allusion to the accused's failure to take the stand and testify would necessarily require the interpretation that the accused failed to take the stand to testify, not on his own behalf, and in denial and contradiction of the People's case, but in full support of the charge against him in the indictment. It is not reasonable to suppose that the jury entertained any such idea. After the denial of the motion for a mistrial, the prosecutor continued in the

same vein in saying " * * * if * * he is innocent, which he says he is, and which he is presumed to be, * * *." He obviously did not mean by this that D'Ambrosio took the stand and testified that he was innocent. Certainly his whole preamble leading up to his discussion of the defense claim of "frame up" could have been better expressed and much of it would better have not been said at all, but if there was any misunderstanding or confusion by one or more jurors, it was taken care of by the state trial judge's charge that the accused had a right either to take the stand or not and that no unfavorable inference could be drawn from his refusal to testify.

The relator-appellant argues that the state trial judge had a duty at the time of the motion for a mistrial to give prompt and emphatic cautionary instructions to the jury; but his whole claim is based upon the assumption that the prosecutor's remarks were a reference to the failure of the accused to take the stand and testify—something no court in reviewing the case has found to be so. Defense counsel did not ask for such cautionary instructions, nor did he request any special charge with regard to it, nor did he except to the charge which the court actually made with regard to the accused's failure to take the stand, although he placed in the record a large number of other exceptions. The trial judge in his charge repeatedly told the jury that they must take the instructions of law from him and no one else. After some deliberation the jury asked for further instruction on some issues but at no time indicated any misunderstanding about the prohibition against drawing unfavorable inferences from the failure of the accused to take the witness stand. Considering the trial as a whole there is nothing to indicate that the relator-appellant was in any way prejudiced by the prosecutor's remarks nor did they in any sense deprive him of a fair trial.

■ The relator-appellant relies strongly upon Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In that case the Supreme Court construed what it had previously said in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), to mean "that the Fifth Amendment, in its direct application to the federal government and its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." In Griffin the prosecutor, after recounting to the jury what he assumed the accused knew about the case said, "These things he has not seen fit to take the stand and deny or explain." Moreover, as was permitted by California law, the trial judge instructed the jury that it could draw reasonable inferences from the accused's failure to take the stand and testify. The facts in the present case are not comparable to those in Griffin.

The relator-appellant also relies upon White v. United States, 114 U.S.App.D.C. 238, 314 F.2d 243 (1962), Fowler v. United States, 310 F.2d 66 (5th Cir. 1962), Smith v. United States, 268 F.2d 416 (9th Cir. 1959) and Knowles v. United States, 224 F.2d 168 (10th Cir. 1955). In White and Fowler there were express remarks in each case directly calling the jury's attention to the failure of the accused to take the stand and testify. In Smith the prosecutor, with the assistance of the trial judge, made it perfectly clear to the jury that the prosecutor's statement about the failure of the defense "to put on some evidence" referred to the three defendants "and no one else." These cases therefore differ widely from the present case on the facts.

■■ In Knowles the prosecutor said to the jury, "He [the accused] had every opportunity in the world given to make an explanation of it, to prove it was in error, to cast doubt upon it. And it wasn't done." When objection was made the trial court instructed the jury that it should in no way be influenced by the accused's failure to testify in his own behalf, but went on to say that the comment of counsel for the Government was not directed to the failure of the accused

to testify but to the failure or lack of evidence on a point at issue—a conclusion which the Court of Appeals found to be correct and a perfectly proper subject for the prosecutor to mention. The court in Knowles held, 224 F.2d p. 170, that the test of improper comment is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." In the present case, we are satisfied that the jury would have taken what the prosecutor said as a reference to the accused's continued assertion of innocence, for the substance of the statement was that D'Ambrosio did not admit to the People's version of events because he claimed he was framed.

■ It is true, however, that ambiguous language, which indirectly invites the jury's attention to the accused's failure to take the stand, will, if not cured by prompt instructions, be grounds for setting aside a subsequent conviction. Coleman v. Denno, 223 F.Supp. 938 (S.D.N.Y. 1963), aff'd sub nom. United States ex rel. Coleman v. Denno, 330 F.2d 441 (2d Cir.), cert. denied 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964); see Desmond v. United States, 345 F.2d 225 (1st Cir. 1965). Although it is possible to strain from the prosecutor's remark an indirect allusion to D'Ambrosio's failure to testify, it can be fairly said that a jury would not, in the context of a formulation of alternatives open to the defense, "naturally and necessarily" interpret it this way. The reminder here that D'Ambrosio had not, at the end of the state's case, conceded his guilt but instead claimed that he was the innocent victim of nefarious police activity, was only a general comment on the posture of the case. The image conveyed was too broad to focus attention on relator's testimonial silence and invite adverse inferences therefrom. See United States v. Wright, 309 F.2d 735 (7th Cir. 1962), cert. denied 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963). Accordingly, we hold that the challenged comment did not infringe relator's constitutional privilege against self-incrimination, now applicable to state prosecutions under Malloy v. Hogan, supra.

The second ground of appeal concerns the judgment and sentence imposed on the relator-appellant as a second offender. After the jury had returned a verdict against him on the charge of attempting to bribe public officers, but before he was sentenced for that offense, the clerk of the court advised D'Ambrosio and his counsel in open court that the People had filed a second felony offender information against him. The information was read aloud. The trial judge told D'Ambrosio that he could stand mute; or deny that he was the person previously named and convicted and that on the trial of that issue he was entitled to elect trial by jury; or that he could admit the prior conviction and his identity and that he would thereupon be adjudged a second felony offender. D'Ambrosio was then given time to confer with his counsel, which he did. He then admitted his identity and the fact that he had been convicted and sentenced for the previous offense. The court adjudged D'Ambrosio to be a second felony offender, to which the appellant took exception. He waived the two day delay before sentencing and the court sentenced him to five to ten years.

■ On this appeal D'Ambrosio claims that he was not given advance notice of the second felony offender charge when he was arraigned on the attempted bribery indictment or before he pleaded "not guilty" or just before the time when he was put to plea on the second felony offender charge; he also claims he was not notified of the increased penalties to which he might be subject as a second felony offender.

At the time of the indictment and of the proceedings relating to the second felony offender charge, the New York Code of Criminal Procedure, § 335–b required notice in advance of trial that, on conviction of the felony charged, a second felony information would be filed. The New York courts have construed this to apply strictly to cases in which a plea of

guilty was made to the indictment; however, it is held to apply to cases to which a not guilty plea was entered, only if prejudice to the defendant has been shown. People ex rel. Schlesinger v. Fay, 19 App. Div.2d 632, 633, 241 N.Y.S.2d 187, 188 (1963), People ex rel. McIntosh v. Fay, 18 App.Div.2d 175, 239 N.Y.S.2d 11 (1963). The New York courts found no prejudice and no error in the present case. The basis for the relator-appellant's habeas corpus petition and the question before this court is whether the New York courts' interpretation and application of the statute, and the procedure followed in conformity with it, violated due process under the Fourteenth Amendment of the Federal Constitution.

■■ In a proceeding of this type, due process simply requires that a defendant be given reasonable notice of the charge against him and an opportunity for a full hearing with the aid of competent counsel. It does not require advance notice that a conviction in the trial on the substantive issue, here the attempted bribery charge, will be followed by a second felony offender charge. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 2d 446 (1962); Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954). In this case the information containing the charge was read aloud and, after his rights were explained, the relator-appellant had an opportunity to consult, and did consult, with his counsel. He made no request for more time or for the adoption of any other procedure. Unlike the defendants in United States ex rel. Collins v. Claudy, 204 F.2d 624 (3rd Cir. 1953) and Rhea v. Edwards, 136 F.Supp. 671 (M.D.Tenn.1955), aff'd 238 F.2d 850 (6th Cir. 1956), he was aware that the issue was before the court, and he had every opportunity to controvert the People's allegations. He chose not to do so; instead, after a discussion with his attorney, he freely admitted the facts alleged in the information. It is settled that under these circumstances a defendant may not complain of lack of reasonable notice, let alone that due process required that notice be given prior to trial on the substantive offense. Oyler

v. Boles, supra, 368 U.S. at 452, 82 S.Ct. 501; Browning v. Hand, 284 F.2d 346 (10th Cir. 1960).

Relator-appellant distinguishes Oyler on the ground that defendant there was cautioned as to the effect of the charges against him, whereas D'Ambrosio was not specifically advised by the trial judge of the increased penalty to which he might be subject as a second felony offender. Reliance is placed on Mounts v. Boles, 326 F.2d 186 (4th Cir. 1963) where it was held that the failure of the court to advise the defendant of the consequences of any admission he might make contravened the due process clause.

However, in Mounts the accused was not told of his right to admit, deny or remain silent when presented with the information, nor does it appear that he was afforded an opportunity to consult with counsel prior to his admission that he was the person named in the prior conviction. The Fourth Circuit therefore held, under those circumstances, that the trial judge should have taken steps to see that the defendant was told what the consequences of his admission of identity were and should have advised him of his procedural rights.

■ Here, in contrast, we would be blind to reality to conclude that relator labored under similar handicaps or was sentenced after a summary proceeding, contrary to fundamental fairness. It is not contended that counsel was unfamiliar with the effect of a second felony offender adjudication or that he did not advise D'Ambrosio of the possible increased penalty,—indeed, the recidivist statute, New York Penal Law, McKinney's Consol.Laws, c. 40, § 1941, has been on the books in various forms since 1881—nor is it alleged that relator was lulled into foregoing any available defense because of the court's omission. There is ample justification for the conclusion that relator's decision to admit the facts alleged in the information was made after a deliberate weighing of the possible alternatives, in full consciousness of the consequences.

The decision of the district court is affirmed.