**UNITED STATES of America**

v.

**Norman WILLIAMS, Appellant.**

**No. 74–2059.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 23, 1975.

Decided Oct. 23, 1975.

Rehearing Denied Nov. 19, 1975.

Thomas W. Kirby,* with whom Sherman L. Cohn, Washington, D. C. (appointed by this court), Edwin J. Bradley, Washington, D. C., and Lese Joslyn* were on the brief, for appellant.

James M. Hanny, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson and John E. Drury, III, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN, Circuit Judge, GEORGE C. EDWARDS, Jr.,** Circuit Judge for the Sixth Circuit, and TAMM, Circuit Judge.

* Entered appearances as student counsel pursuant to Rule 20 of the General Rules of this court.

** Sitting by designation pursuant to Title 28 U.S.Code § 291(a).

McGOWAN, Circuit Judge:

Appellant and a codefendant, Frank P. McDowell, were charged with bank robbery in violation of 18 U.S.C. § 2113(a) (1970). At a joint trial, appellant was convicted and McDowell was acquitted. Appellant assigns a number of grounds of error, only two of which we consider below. For reasons stated hereinafter, we affirm.

I

On March 22, 1974, a man approached a teller window of the Public National Bank at 1203 E. Street, N.W., in Washington, and presented Ms. Carton, the teller, with a note reading: "This is a holdup. You will die if you don't obey."[1] Ms. Carton reached into her drawer five times to get money to give the robber. She never saw him remove the money from the counter, but did have ample opportunity to observe him from close range. A second, taller man, standing from seven to ten feet behind the robber, approached the counter, reached out his arm, and returned it to his side grasping money in his palm.

After the film in the bank's surveillance cameras had been processed, an FBI agent showed Ms. Carton two still photographs printed from the surveillance film, and she identified the men in the photographs as those who robbed her. On April 5, the agent returned and showed Ms. Carton ten photographs, from which she selected two, identifying the man who passed her the note as appellant and the taller man behind him as McDowell. On April 16 and 23, Ms. Carton made lineup identifications of McDowell and appellant respectively.

Appellant was arrested on April 17 and taken into custody. While at the Robbery Squad office of the Metropolitan Police Department, he was shown seven photographs taken during the robbery. He "giggle[d]" and "smiled"[2] and then gave an oral confession admitting commission of the robbery. Both appellant and McDowell failed to testify or to present any witnesses at trial.

II

We first consider appellant's claim that the prosecutor improperly commented upon appellant's silence. During the cross-examination of a police detective concerning appellant's post-arrest statement, defense counsel asked a series of questions about appellant's ability to read and therefore to understand the forms he signed acknowledging that he understood his *Miranda* rights. Appellant's counsel asserts that these questions were designed to explore the voluntariness of his client's statement, although the detective had already testified during the suppression hearing and on direct examination that appellant read and signed the forms.[3] After several such questions and answers, the prosecutor stated before the jury: "Your Honor, I assume that Mr. Levie [defense counsel] is going to introduce evidence either positive or negative on the questions that he is making."[4] Appellant's counsel objected and moved for a mistrial, claiming that the prosecutor's comment suggested to the jury that the defendant was under a duty to present evidence. The trial judge denied the motion, stating

"Well counsel, I don't believe you have any standing to ask for a mistrial in view of the fact that you caused the whole thing.

"Now, you are making an innuendo which you knew was without any basis before this jury. Now, you are stuck with it."[5]

No cautionary instruction was sought or given.

It is clearly established that both the Fifth Amendment, *see Griffin*

1. Tr. 129.
2. *Id.* 333.
3. *Id.* 55, 335.

4. *Id.* 356–57.
5. *Id.* 359.

*v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and 18 U.S.C. § 3481 (1970), *see Wilson v. United States,* 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893), prohibit a prosecutor from making adverse comment before the jury on a defendant's failure to testify. In determining whether a remark falls within the boundary of that prohibition, the test is whether, in the circumstances of the particular case, "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955); *accord, e. g., United States v. Sanders,* 466 F.2d 673, 674 (9th Cir. 1972) (*per curiam*); *United States v. Mahanna,* 461 F.2d 1110, 1114, 1115 (8th Cir. 1972); *Davis v. United States,* 357 F.2d 438, 441 (5th Cir.), *cert. denied,* 385 U.S. 927, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966); *United States ex rel. D'Ambrosio v. Fay,* 349 F.2d 957, 960–61 (2d Cir. 1965), *cert. denied,* 382 U.S. 921, 86 S.Ct. 301, 15 L.Ed.2d 235 (1965).

■ Taking the first half of this test, we do not believe that the prosecutor's comment was intended to call the jury's attention to appellant's failure to testify; it appears to have been an objection rather to a line of questioning as resting on an inadequate factual basis and being pursued in less than good faith. Turning to the second half of the test, we believe the comment can be regarded at most as only an indirect reference to appellant's failure to testify. Appellant could have introduced evidence on his ability to read other than by himself taking the stand. Furthermore, the statement was made before the prosecution had concluded its case in chief; because the jury could not then have realized that defendant would remain silent throughout the trial, the remark is unlikely to have attracted their attention to a failure to testify. Finally, the statement by its terms did not refer specifically to the defendant's failure to testify or invite the jury to consider such a failure in weighing the evidence. Hence, we find the jury would not "naturally and necessarily" take the remark to be a reference to appellant's failure to testify.[6]

■ Though we find no error, we are not impressed with the prosecutor's conduct in this instance, creating as it did an unnecessary problem on appeal. He could easily have registered his objection in more precise terms to appellant's questioning early on, rather than waiting until several questions and answers had been completed. Had he succeeded in derailing the entire line of inquiry, any problem now thought to exist would have disappeared. More important, his remark before the jury violated the "strict observance" of his obligation to avoid any adverse comment to the jury that "has been many times commended

**6.** The Second Circuit's opinion in *United States v. Fay, supra,* may be read to suggest a two-part test for improper comment by the prosecutor on the defendant's failure to testify: if, as in this case, the *Knowles* test is not met, the judge must nonetheless offer a cautionary instruction whenever ambiguous language even indirectly calls attention to the accused's failure to testify. *See* 349 F.2d at 961. *See also United States v. Hines,* 147 U.S.App.D.C. 249, 455 F.2d 1317, 1335, *cert. denied,* 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972) (an immediate cautionary instruction is an adequate remedy for prosecution comment that "no more than incidentally 'pointed up'" defendant's failure to take the stand), *quoting United States v. Barney,* 371 F.2d 166, 171 (7th Cir. 1966), *cert. denied,* 387 U.S. 945, 87 S.Ct. 2080, 18 L.Ed.2d 1333 (1967). We would have serious doubts about the wisdom of applying such a rule when, as in this case (as well as in *Fay, Hines,* and *Barney*), the defendant does not himself request a cautionary instruction after a remark that only incidentally points to his failure to testify. In any event, we need not decide whether we would subscribe to the reading of *Fay* adumbrated above. In this case, any prejudice to the appellant was slight; the case against him, consisting of a voluntary confession and a clear identification by Ms. Carton, was very strong; and appellant failed to establish a plausible defense or to dent significantly the prosecution's case. In these circumstances, the lack of a voluntary cautionary instruction, if error, was harmless.

to prosecuting attorneys." *White v. United States,* 114 U.S.App.D.C. 238, 314 F.2d 243, 246 (1962).

### III

The second claim we consider is that of prejudice by reason of the trial judge's refusal to grant appellant's request for a general instruction to the jury that no inference of guilt should be drawn from either defendant's refusal to testify.[7] The exchange on this subject at the conference before the jury was charged, reproduced below,[8] reveals that the judge initially acceded to this request, but later changed her mind when appellant's codefendant objected on the ground that a general instruction would call attention to his failure to testify. The judge offered instead the following instruction: "[E]very defendant in a criminal trial has an absolute right not to testify. You must not draw any inference of guilt from Mr. William's [sic] not testifying."[9] Appellant's counsel objected to the proposed substitute because it highlighted his client's failure to testify, a problem the trial judge had already acknowledged,[10] and withdrew his request in light of the substitute proposed. No instruction concerning failure to testify was given.

---

7. The standard instruction contained in the District of Columbia Bar Association, Criminal Jury Instructions for the District of Columbia, § 2.26 (2d ed. 1972), reads: "Every defendant in a criminal case has the absolute right not to testify. You must not draw any inference of guilt against the defendant because he did not testify."

8. THE COURT: You want the failure of the defendant to testify?

MR. LEVIE [Counsel for Williams]: Yes.

THE COURT: All right.

\* \* \* \* \* \*

MR. KLEIBOEMER [Counsel for McDowell]:

. . . . . .

Now, the second point I wanted to raise is the one that Your Honor so perspicaciously has already anticipated, and that is that I strenuously object to the giving of the failure of the defendant to testify because it highlights his failure to do so.

In the event the Court denies my request I would ask for a severance at this time.

THE COURT: Mr. Levie, would you like to reconsider your request in regard to that particular item?

I might say that generally speaking the defense has asked the Court not to give it, feeling that it does have a sort of backfire effect.

MR. LEVIE: Would Your Honor indulge me one moment? (Conferring with his defendant).

Your Honor, in light of what transpired Wednesday afternoon, with Mr. Drury's comment to the jury at the end of the case, I feel that something is already in the jury's mind as to whether the defendants would testify.

I feel that Your Honor is quite correct, in most cases I would not ordinarily ask for it.

But I think the matter has already been highlighted before the jury and I don't feel—

THE COURT: In what way?

MR. LEVIE: In my memorandum for a mistrial, Your Honor, I feel that Mr. Drury's comment that the defense will be expected or he expects the defense will put on some evidence regarding whether or not Mr. Williams can read.

\* \* \* \* \* \*

THE COURT: Insofar as this statement goes, I will say that every defendant in a criminal trial has an absolute right not to testify. You must not draw any inference of guilt from Mr. William's [sic] not testifying.

I think that would make it worse, as far as your client is concerned.

MR. KLEIBOEMER: Your Honor, I must have a severance because that inures to the prejudice of my client and I so move at this time.

MR. LEVIE: If Your Honor would give the instruction as she just stated it, that is, highlighting no inference drawn from Mr. Williams' failure to testify, then under those circumstances, Your Honor, I would be forced to withdraw my request, in light of the Court's proposed instruction.

MR. DRURY [United States Attorney]: Your Honor, I object to that. I think that both Mr. Kleiboemer and Mr. Levie know that they are putting the Court in a vise and I feel that a broad general instruction is the only way to handle that.

MR. KLEIBOEMER: Your Honor, the Government has put the Court in a vise. The Government charged both of these people in one indictment.

THE COURT: Well, I think that we are not going to retry the case at the moment. I am not going to give it.

Tr. 410, 415–16, 418.

9. *Id.* 418.

10. *Id.*

■ Appellant now asserts that the refusal to grant his request for a general instruction constitutes prejudicial error. As a substantive matter his argument has considerable merit. *Bruno v. United States,* 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939), held that criminal defendants have a right under 18 U.S.C. § 3481 (1970) to have a failure to testify instruction read if requested. However, there is no similar right of defendants to insist that such an instruction *not* be given. It is well-established that it is not error for a trial judge to read such an instruction to the jury where the judge includes the instruction on his own initiative, *United States v. Carter,* 422 F.2d 519, 520–21 (6th Cir. 1970); *United States v. Schwartz,* 398 F.2d 464, 469–70 (7th Cir. 1968), *cert. denied,* 393 U.S. 1062, 89 S.Ct. 714, 21 L.Ed.2d 705 (1969); *Hanks v. United States,* 388 F.2d 171, 175 (10th Cir. 1968), *cert. denied,* 393 U.S. 863, 89 S.Ct. 144, 21 L.Ed.2d 131 (1969); *Bellard v. United States,* 356 F.2d 437, 439 (5th Cir. 1966), *cert. denied,* 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966); *United States v. Garguilo,* 310 F.2d 249, 252 (2d Cir. 1962), or even over the objection of the sole defendant in a criminal case, *United States v. McGann,* 431 F.2d 1104, 1109 (5th Cir. 1970) *cert. denied,* 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1971); *United States v. Wick,* 416 F.2d 61, 62–63 (7th Cir.), *cert. denied,* 396 U.S. 961, 90 S.Ct. 436, 24 L.Ed.2d 425 (1969); *Lyons v. United States,* 109 U.S.App.D.C. 103, 284 F.2d 237 (1960) (*per curiam*), *cert. denied,* 365 U.S. 821, 81 S.Ct. 705, 5 L.Ed.2d 699 (1961); *Franano v. United States,* 243 F.Supp. 709, 711–12 (W.D.Mo.1965).[11] *A fortiori,* in a joint prosecution of multiple defendants, it has consistently been held that a judge does not commit error by granting one defendant's request for a general instruction over the objection of one or more codefendants. *United States v. Schroeder,* 433 F.2d 846, 851 (8th Cir. 1970), *cert. denied,* 401 U.S. 943, 91 S.Ct. 951, 28 L.Ed.2d 224 (1971); *United States v. Russo,* 413 F.2d 432, 434–35 (2d Cir. 1969); *Caton v. United States,* 407 F.2d 367, 374–75 (8th Cir.), *cert. denied,* 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969); *United States v. Kelly,* 349 F.2d 720 (2d Cir. 1964), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).[12]

■ These cases illustrate that the paramount concern is preservation of a defendant's freedom to exercise the statutory right guaranteed by *Bruno.* That freedom is unduly circumscribed when a defendant must choose between the substitute instruction here proposed by the trial judge—which plainly raises legitimate, if necessarily speculative, fears that by singling out one defendant it does more harm than good—and no instruction at all. Adherence to a rule requiring the reading of a general instruction when requested by one defendant, regardless of the wishes of codefendants, would protect the statutory right without interfering with any substantial interests of codefendants.

■ Notwithstanding the merits of this argument, however, we do not believe defendant may urge it as a basis for reversal on appeal. Under *Fed.R. Crim.P.* 30, "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his

---

11. Although such a refusal to honor the wishes of defendant has not been held to be reversible error, we believe, as several courts have suggested, *see Bellard v. United States, supra,* at 439; *United States v. Garguilo, supra,* at 242; *Becher v. United States,* 5 F.2d 45, 49 (2d Cir. 1924) (Hand, J.), *cert. denied,* 267 U.S. 602, 45 S.Ct. 462, 69 L.Ed. 808 (1925), that the better practice, in cases where there are no conflicting wishes of codefendants, is for the trial judge to respect the tactical decisions of defense counsel.

12. The requests of defendants not to have the instruction read have been accorded little respect by these cases on the theory that the jury will have a tendency to presume guilt from a failure to testify, the instruction merely counteracts this tendency, and in any event the instruction is for the benefit of the defendant.

objection." Although after the jury was charged the appellant did object to the judge's failure to include the instruction originally requested, his objection did not state distinctly the ground upon which the objection was based.[13] As has often been noted, the purpose of this requirement is to permit the trial judge to correct possible errors before the jury retires. *See* 2 *C. Wright, Federal Practice & Procedure, Criminal* § 484, at 284 & n. 35 and cases cited therein (1969). Had Williams pointed out to the judge with greater specificity the reasons why he believed the general instruction should have been given even over his codefendant's objection, perhaps alerting the judge that the authorities uniformly support his claim, the instruction might well have been included, and this problem would have evaporated.[14] However, mere objection to instructions without specification of the ground of objection does not fulfill Rule 30's purpose and is insufficient to satisfy the rule's requirements. *United States v. Howard,* 139 U.S.App.D.C. 347, 433 F.2d 505, 508–09 (1970); *Ryan v. United States,* 314 F.2d 306, 310 (10th Cir. 1963); *Tomley v. United States,* 250 F.2d 549 (5th Cir. 1957), *cert. denied,* 356 U.S. 928, 78 S.Ct. 716, 2 L.Ed.2d 759 (1958); *Armstrong v. United States,* 228 F.2d 764, 767–68 (8th Cir. 1956), *cert. denied,* 351 U.S. 918, 76 S.Ct. 710, 100 L.Ed. 1450 (1956); *Benatar v. United States,* 209 F.2d 734 (9th Cir. 1954), *cert. denied,* 347 U.S. 974, 74 S.Ct. 786, 98 L.Ed. 1114 (1954).

*Affirmed.*

13. The entire discussion was as follows:

THE COURT: Are you satisfied?

MR. DRURY [United States Attorney]: Yes, Your Honor.

THE COURT: Are you satisfied?

MR. LEVIE [Counsel for Williams]: Your Honor, in the identification instruction you left out from the proposed instruction, which is actually taken from Telfaire, you may take into account any occasions in which the witness failed to make an identification or made an identification inconsistent with his identification at trial.

THE COURT: It isn't applicable, is it?

MR. LEVIE: I think it is because Ms. Holyfield—

THE COURT: Never identified anybody.

MR. LEVIE: She failed to identify anybody.

THE COURT: I read it as presented from the case.

MR. LEVIE: My addition was from Telfaire, Your Honor. The only other objection I would have, Your Honor, is giving up the Alternative B with respect to confession, and I note Your Honor did not give an instruction on failure of the defendant to testify.

THE COURT: I believe you indicated that under the circumstances you would withdraw your request.

MR. LEVIE: I got confused. Under the alternative Your Honor proposed, yes, I did say that I would withdraw the request. Tr. 483–84.

14. The defense counsel did state before the charge was read that the reason he desired to have the instruction read was the prosecutor's comment, discussed above, concerning whether the appellant would introduce evidence on his ability to read. *See* note 8 *supra.* This statement, however, relates to strategic reasons why the defense counsel wanted the instruction, not the legal reasons why he was entitled to it over his codefendant's objection. The right to have an instruction read if requested is not predicated upon the existence of any special need resulting from prejudice earlier at trial, but rather is absolute. *Bruno, supra,* 308 U.S. at 294, 60 S.Ct. 198; *see, e. g., United States v. Knox Coal Co.,* 347 F.2d 33, 44 (3d Cir. 1965), *cert. denied,* 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965); *White v. United States,* 114 U.S.App.D.C. 238, 314 F.2d 243, 246 n. 8 (1962). Therefore, the earlier statement by the prosecutor did not in any way reinforce the defendant's right to have his request honored notwithstanding his codefendant's objection, and was not the ground for objection to the omission which, under Rule 30, must be distinctly stated.