**Richard C. BYRD, Appellant,**

v.

**UNITED STATES, Appellee.**

**Robert C. CROWE, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 9478, 9479.**

District of Columbia Court of Appeals.

Argued May 11, 1976.

Decided Oct. 20, 1976.

---

**1216**

James L. Lyons, Washington, D.C., appointed by this court, for Richard C. Byrd.

Gary M. Hoffman, Washington, D.C., appointed by this court, with whom James H. Marsh, Jr., Washington, D.C., also appointed by this court, was on the brief, for Robert C. Crowe.

Mary-Elizabeth Medaglia, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and John T. Kotelly, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, FICKLING and NEBEKER, Associate Judges.

NEBEKER, Associate Judge.

Appellants were convicted by a jury of first-degree murder in the shooting death of a service station employee and were sentenced to imprisonment for terms of 20 years to life. Together they raise the question whether the prosecutor improperly commented on their Fifth Amendment right not to testify.[1] Appellant Crowe as-

---

1. We, thus, find it unnecessary to treat Crowe's contention that a reversal of Byrd's conviction would mandate the reversal of his own. *But see Strickland v. United States,* D.C.App., 332 A.2d 746, 749 (1975).

serts three additional issues: (1) the sufficiency of evidence for a conviction as an aider and abettor; (2) the denial of his motion for severance; and (3) the trial court's refusal to give a self-defense instruction. We affirm the convictions.

Appellants were drinking while parked at a service station in the predawn hours of August 18, 1974. Byrd apparently had had too much to drink, and, as a result, regurgitated on the pavement outside the car. A station employee, Isaiah Durham, requested that Byrd clean up the vomitus. There was disagreement and an altercation ensued in which Durham wielded a screwdriver.[2] As the fight terminated and appellants began to leave the station, Byrd called to Durham and requested that he turn around so that he could see him because he was going to "get" him.

Shortly thereafter, appellants were seen leaving an apartment. Byrd was holding his arm close to his side as if to clench something to his body. Appellants entered the same automobile and eventually returned to the service station. Byrd alighted from the vehicle and confronted Durham. Byrd quickly lifted his hands, after which a blast and flash were noted. He returned to the automobile operated by Crowe and the two of them drove away. Durham was unconscious when police arrived and was pronounced dead upon arrival at the hospital. Appellants were arrested and returned to the service station where an employee identified them as the two men involved in the murder.

## I

The issue of comment on failure to testify arose in the following manner. Counsel for Byrd broached the subject of silence in the face of accusation during his summation by posing a hypothetical situation for jury evaluation of circumstantial evidence. He argued:

> Now, let me ask you to consider for a moment the fact that you are walking along a street here late at night, and you hear over in the bushes, you hear a person who is crying out to you, and saying help, I have got a knife in my back, and let's consider for a moment that you do walk behind the bushes, and you see a man lying on the ground, and he does have a knife in his back, and he is begging and pleading to you to take the knife out of his back and let's assume that you reach down and are going to pull the knife out of this person's back. There you are, ladies and gentlemen, you are bent over, you are behind the bushes, and you have your hand on the knife. No question about your fingerprints being on the knife, and just as you start to pull the knife up, ladies and gentlemen, low [*sic*] and behold a police officer walked behind the bushes.
>
> Now, here you are. You are in a position where—and let's assume that the person dies before he is able to indicate to the police officer that you didn't stab him. Now, here you are, ladies and gentlemen, you are there at the time, at the place. You have the knife in your hand, and your fingerprints on the knife, and the person is dead.

In rebuttal to this argument, the prosecutor said:

> Now, [counsel for Byrd] made an example about circumstantial evidence, and I'd like to comment upon it. The example was the man in the bushes and the knife in his back, and the poor person coming along and pulling the knife out just as the police come. Circumstantial evidence that he did it, and if you heard such evidence and the defendant took the stand and said, "Hey, I just walked into

2. When Byrd was arrested, authorities found small puncture wounds in his back which, testimony showed, might have been inflicted by a screwdriver.

the bushes, and he had a knife in his back. I was trying to help him." Twelve reasonable persons might have a reasonable doubt, but if the Government had shown you that just before the man with the knife was seen taking it out of the back, that people had heard the man with the knife telling the man who was killed, "Hey, turn around and let me look at your face. I am going to get you." If other witnesses had seen the man that was killed going into the bushes closely followed by the man with the knife, isn't that more than ample evidence as to who did it? Even though no one actually saw the man putting the knife into the back of the other man, do you have to have a motion picture or scientific evidence, or can you relate your own personal experiences and knowledge and intelligence to the . facts that have been presented in the case?

Since neither defendant in the instant case testified, it is the reference to the hypothetical defendant taking the witness stand to which both defense counsel took objection at trial.

The standard for determining whether the court erred in these circumstances in failing to grant a mistrial was stated in *Blango v. United States,* D.C.App., 335 A. 2d 230, 232 (1975), to be whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be com-

ment on the failure to testify. *See also United States v. Williams,* 172 U.S.App.D. C. 290, 521 F.2d 950 (1975).[3]

■ In evaluating the instant case in light of this two-part test, we find no error. First, the prosecutor's remarks were seemingly not directed toward appellants; rather they were confined to rebuttal of a hypothetical argument on the worth of the government's evidence. The record reveals no manifest intention on the government's part to highlight the appellants' failure to take the stand. The present controversy is analogous to *United States v. Williams, supra* at 292, 521 F.2d at 952, where defense counsel initially broached the Fifth Amendment subject. *Cf. Van Storey v. United States,* D.C.Mun.App., 77 A.2d 318, 319 (1950). Additionally, "the statement by its terms did not refer specifically to the [appellants'] failure to testify or invite the jury to consider such a failure in weighing the evidence." *United States v. Williams, supra,* 172 U.S.App.D.C. at 293, 521 F.2d at 953. Such an oblique and indirect comment, when viewed in context, does not substantially suggest that the jury would naturally and necessarily take the remark to be a reference to appellants' failure to testify. *See United States v. Driscoll,* 454 F.2d 792, 800–01 (5th Cir. 1972).

In *United States v. Cerullo,* 435 F.2d 142 (5th Cir.1970),[4] and *United States v.*

---

3. Variations of the aforementioned test have been utilized in this jurisdiction. In *Manago v. United States,* D.C.App., 331 A.2d 335, 337 (1975), we held that a prosecutor's comment could be deemed error if "it substantially removed the presumption of innocence." *Leftwitch v. United States,* D.C.App., 251 A.2d 646, 649 (1969), suggested that the context of the comment be considered to determine whether the statement was "a clear call to the jury's attention that appellant had not testified . . . ." In *White v. United States,* D.C.App., 248 A.2d 825, 826 (1969), we noted that a prosecutor's remarks are improper and prejudicial if they "clearly called the jury's attention to the fact that the appellant had not testified". *See also Brooks*

v. *District of Columbia,* D.C.Mun.App., 48 A.2d 339 (1946).

4. In *United States v. Cerullo, supra,* it was argued that the prosecutor's explanation of circumstantial evidence, which was associated with the following statement, amounted to prejudicial error:
"The same thing holds true here, ladies and gentlemen. This is circumstantial evidence. He didn't make any admission that we could get for you". . . . [*Id.* at 143.]
The trial court denied a motion for mistrial and the circuit court affirmed by noting the context of the statement and the subsequent instruction on failure to testify. *Id.*

*Winters,* 420 F.2d 523 (3d Cir.1970),[5] which are factually similar to the case at hand, the courts declined to find reversible error. *See also People v. Parks,* 32 Cal. App.3d 143, 108 Cal.Rptr. 34, 40–42 (1973). We hold reversal to be unwarranted on this ground.

## II

■ The first of the three contentions raised by Crowe alone concerns the sufficiency of the evidence to support his conviction as an aider and abettor. It is well established that an individual who knowingly participates in the commission of a criminal act by assisting the principal is equally liable. *See* D.C.Code 1973, § 22–105; *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949). The elements to establish aiding and abetting are (1) that an offense was committed by someone; (2) that the accused assisted or participated in its commission; and (3) that he did so with guilty knowledge. *See Blango v. United States, supra* at 235; *United States v. Lumpkin,* 145 U.S.App.D.C. 162, 167, 448 F.2d 1085, 1090 (1971); *United States v. Harris,* 140 U.S.App.D.C. 270, 284 n.40, 435 F.2d 74, 88 n.40 (1970).

■ The evidence when viewed most favorably to the government reveals that each of the elements is satisfied. Crowe was involved in the prior altercation and was near Byrd when he threatened Durham. He drove the automobile to the place where Byrd obtained a gun and then drove to the service station. He also drove during their flight after the shot had been fired. We conclude that that evidence showing Crowe to have been an aider and abettor was sufficient. *See United States v. Harris, supra* at 285, 435 F.2d at 89; *Thompson v. United States,* 132 U.S.App. D.C. 38, 405 F.2d 1106 (1968); *Long v. United States,* 124 U.S.App.D.C. 14, 20–21, 360 F.2d 829, 835–36 (1966). The authority cited by appellant Crowe fails to support his contention. His actions were not limited to assisting Byrd after the commission of the offense. [6]

■ Crowe also contends that the trial court abused its discretion in denying his motion for severance because of the statement by Byrd that he would "get" Durham.[7] Byrd and Durham engaged in fisticuffs following an argument over the removal of Byrd's vomitus. Byrd and Crowe turned to leave the premises when Byrd called to the victim and stated that he was going to "get" him. They were togeth-

---

5. In *United States v. Winters, supra,* the appellant was convicted of concealing and retaining stolen money orders and he presented no evidence in his defense. The prosecutor's closing argument to the jury contained the following comment:
"* * * Wouldn't a man without guilty knowledge, when he saw [the] Inspector . . . take out the brown bag from the cabinet, say, 'I have never seen that before. I don't know how that got there?' Or, after the bag was opened by [the] Inspector . . . and the money orders taken out, wouldn't he say, 'I have never seen those before and I don't know how they got there'?" [*Id.* at 524.]
The appellate court affirmed and held that the comment would not " 'cause the jury to draw negative implications from the failure of the defendant to take the stand and testify.' " *Id.* at 525.

6. The fact that there was some evidence that Crowe attempted to break up the earlier fight between Byrd and Durham and later cautioned Byrd against shooting Durham does not exonerate Crowe as an aider and abettor. Such evidence was controverted, and, in any event, does not otherwise negate the account of his assisting with the commission of the homicide.

7. We find no need for an instruction limiting to Byrd alone consideration of the testimony as to the threatening comment made by Byrd to Durham. The statement was admissible against both appellants. *See United States v. Rivers,* 468 F.2d 1355, 1356–57 (4th Cir. 1972), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 691 (1973).

er then and during the subsequent events leading to the shooting. We conclude there was adequate evidence that appellants were acting in concert. Thus, a severance was not required. *Jackson v. United States,* D.C.App., 329 A.2d 782 (1974). The statement does not fall within the confines of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as it was admissible against both appellants and was not hearsay as to Crowe.[8]

 Finally, Crowe maintains that the court erred in denying his request for an instruction on self-defense. The record, however, is devoid of any evidence fairly tending to bear upon the issue of self-defense. The witnesses called in Crowe's defense did not present any evidence to support such a defense. The government's witnesses did not suggest that the victim was armed or that Byrd acted in self-defense. Rather, the victim's fellow employee stated that Durham's hand was empty at the time of the shooting. The fact that Durham was positioned near a parked automobile is insufficient to require such an instruction. *Cf. Rhodes v. United States,* D.C.App., 354 A.2d 863 (1976).

The convictions are therefore

*Affirmed.*

---

8. "Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." *Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974) (footnote omitted). *See also* 5 J. Wigmore, Evidence § 1361 (3d ed. 1940) ; C. McCormick, Law of Evidence § 246 (2d ed. 1972). The words were relevant in proving premeditation and deliberation for first-degree murder.