UNITED STATES of America

v.

Albert Lee HAWKINS, Appellant.

No. 77–1911.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 9, 1978.

Decided Dec. 12, 1978.

Rehearing Denied Jan. 3, 1979.

Certiorari Denied April 16, 1979.
See 99 S.Ct. 2005.

Howard Seife,* with whom Larry J. Ritchie and Michael E. Geltner, Washington, D. C. (appointed by this Court) were on the brief, for appellant.

Charles H. Roistacher, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William J. Hardy, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROBINSON, MacKINNON and ROBB, Circuit Judges.

Opinion PER CURIAM.

* Entered an appearance as Student Counsel pursuant to Rule 20 of the General Rules of this Court.

1. Pursuant to 21 U.S.C. § 841(a) (1976); 33 D.C.Code § 402 (1973).

2. Probable cause exists when circumstances known to a police officer are such as to warrant a person of reasonable caution in the belief

## PER CURIAM:

Police officers using binoculars observed appellant Hawkins participating in a series of what appeared to be drug transactions. Maintaining their surveillance, they radioed details of his activities to their supervisor, who was stationed some blocks away. The supervisor later arrived on the scene and arrested appellant. He was indicted for narcotic violations, and tried by a jury and found guilty.[1] Now appealing, he cites three evidentiary rulings. We conclude that none warrants reversal.

### I

Initially, appellant challenges the denial of his motion to suppress $393 discovered by the officers in the trunk of his automobile immediately following his arrest. He argues that the officers lacked probable cause to believe that incriminating evidence would be found in the trunk and that, even assuming the existence of probable cause, a search warrant should first have been obtained. We disagree on both counts.

During most of the period that appellant was under observation, he was stationed alongside the car, which was parked on a public street. From that point he was seen engaging in activity reasonably indicating drug peddling. After one apparent sale, appellant carried currency obtained thereby to the trunk of the car, and when he moved away the bills were no longer in his hand. Upon his arrest, officers removed from his person $73 in bills, keys to the car, and a bag of what seemed to be marijuana, and retrieved narcotics cached by an adjacent log. These circumstances, and the inferences naturally arising from them, readily suggested that incriminating evidence would be found in the trunk.[2]

that a search would reveal incriminating evidence. See, e. g., Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1924). We dismiss appellant's argument that the supervisory officer, who ordered the search of the locked car, himself lacked probable cause to believe the car was associated with criminal transactions. In the first place, probable cause may emanate from the collective knowledge of the police, though the officer who

■ We are similarly unpersuaded by the related argument that the officers were required to secure a warrant prior to conducting the trunk-search. To be sure, we have said that a warrantless search of an automobile parked on a public thoroughfare requires both probable cause justifying the intrusion and exigent circumstances justifying the absence of a warrant.[3] Here the conditions were exigent, for only a search of the trunk could more tangibly have vindicated the officers' belief that appellant had been peddling drugs. Since only by detaining the vehicle for some period[4] could a warrant have been procured beforehand, we take our instruction from the Supreme Court:

> Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one

hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.[5]

## II

■ Appellant further claims that his right to a fair trial was jeopardized when the District Court permitted the jury to experiment with the police binoculars in the jury room during its deliberations. The binoculars had been received in evidence, and the experiment served to gauge the validity of the Government's position that the officers were able to discern the details of the pre-arrest drug transactions from their observation post.

As a test of the strength of the binoculars, the exercise was permissible; it was only an evaluation of evidence properly before the jury.[6] Moreover, appellant is hardly in position to complain, for he too suggested that the jury conduct an experiment with the binoculars.[7]

performs the act of arresting or searching may be far less informed. *E. g., Smith v. United States*, 123 U.S.App.D.C. 202, 204, 358 F.2d 833, 835 (1966), *cert. denied*, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967). As this court remarked in *Williams v. United States*, 113 U.S.App.D.C. 371, 372, 308 F.2d 326, 327 (1962), "[t]he whole complex of swift modern communication in a large police department would be a futility if the authority of an individual officer was to be circumscribed by the scope of his first hand knowledge of facts concerning a crime or alleged crime." Moreover, the supervisory officer who initiated the search challenged here had been in constant radio communication with the officers on the scene, had been given details of the observations of the other officers, and thus was aware of the possible involvement of the car in drug dealings.

3. *United States v. Robinson*, 174 U.S.App.D.C. 351, 356, 533 F.2d 578, 583, *cert. denied*, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976). And see *United States v. Chadwick*, 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484–2485, 53 L.Ed.2d 538, 548–549 (1977), and cases there cited.

4. Even the newly-promulgated procedure for obtaining a search warrant by telephone, Fed.

R.Crim.P. 41(c)(2), requires time before the warrant can be issued, for an officer pursuing that course must first prepare a "duplicate original warrant," to be read verbatim to the federal magistrate requested to issue it. Fed.R. Crim.P. 41(c)(2)(B).

5. *Chambers v. Maroney*, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970).

6. *United States v. Downen*, 496 F.2d 314, 320–321 (10th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974); *United States v. Beach*, 296 F.2d 153, 158–159, 95 A.L.R.2d 342, 349 (4th Cir. 1961); *Taylor v. REO Motors, Inc.*, 275 F.2d 699, 705 (10th Cir. 1960). Also see 4 Wigmore Evidence §§ 1150–52 (Chadbourn rev. 1972).

7. In closing argument to the jury, defense counsel stated:

> Take a look at these binoculars; play around with them back there; see what you can see.
> I suggest to you a little experiment. Some lady with a ring that has a distinctive color— o.k.?—she doesn't let—or some item, whatever it is, don't let the others see what that

## III

■ Appellant's last contentions center on the prosecutor's summation to the jury. Among other protests,[8] he complains that the prosecutor improperly referred to facts not in evidence,[9] and unfairly sought to arouse the passions of the jury by implying that the community was relying upon it to convict and thereby to help rid the streets of drug dealers.[10] As many times we have said, counsel are not free to go outside the evidence in arguments to the jury.[11] Nor is

the prosecutor at liberty to substitute emotion for evidence by equating, directly or by innuendo, a verdict of guilty to a blow against the drug problem.[12]

■ We need not decide, however, whether the challenged statements reach the level of error,[13] for we are satisfied that even if they do, reversal is not justified. We have frequently held similar missteps harmless in light of the relative strength of the case against the accused,[14] or because

color is. Somebody take the binoculars and pass the ring from top to bottom. See if the person with the binoculars can see what color that item is.
Trial Transcript (Tr.) 364.

**8.** One is that the prosecutor drew attention to appellant's failure to testify when he said:

He did offer some evidence here, a couple of pictures and a couple of documents and the testimony of Mrs. Savage. That's all he offered. That's all he had.

He told you he didn't have to offer anything. He didn't have to prove anything. But he did—he tried to prove something. He tried to prove his client was innocent with that kind of evidence.

Tr. 373–374. It is, of course, well settled that comment on the accused's declination of the witness stand must be scrupulously avoided. *E. g., Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); 18 U.S.C. § 3481 (1976). It is clear, too, that even oblique references in that direction, if sufficiently suggestive, are taboo. *E. g., United States v. Brown,* 546 F.2d 166, 173 (5th Cir. 1977). But "[i]n determining whether a remark falls within the boundary of that prohibition, the test is whether, in the circumstances of the particular case, 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *United States v. Williams,* 172 U.S.App.D.C. 290, 293, 521 F.2d 950, 953 (1975), quoting *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955). We conclude that, measured by this standard, the questioned statement—essentially a claim of pervasive weakness in appellant's overall evidence—was not improper. Compare *United States v. Joyner,* 160 U.S.App.D.C. 384, 388, 492 F.2d 650, 654, *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 83 (1974); *Newell v. Slayton,* 468 F.2d 888, 889–890 (4th Cir. 1972); *United States v. Dearden,* 546 F.2d 622, 625 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977); *United States v. Murray,* 530 F.2d 856, 857 (9th Cir. 1976).

**9.** "[T]hey [the police] sat there for a half hour and watched Mr. Hawkins and Mr. King deal with drugs.

"They had watched it countless times before. They had watched it the day before. They continued to watch it for five hours after that, after they locked up Hawkins." Tr. 374.

**10.** "You know that there are people who live in that area who don't like that, people who call up and complain about it. They have a right to. They are not here. More or less, I am representing them.

"If they were here, they would say that they believe presumably what I would say, that '[w]e don't need drug dealers; we don't need people selling Preludin in our neighborhood. We can't do anything about it. The DA's office and the police should do something about it.'

"We did something about it. All we can do is bring it to you and turn it over in your hands." Tr. 377–378.

**11.** *United States v. Caldwell,* 178 U.S.App.D.C. 20, 49, 543 F.2d 1333, 1362 (1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States v. DeLoach,* 164 U.S. App.D.C. 116, 120, 504 F.2d 185, 189 (1974), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2232, 48 L.Ed.2d 834 (1976); *United States v. Jones,* 157 U.S.App.D.C. 158, 164, 482 F.2d 747, 753 (1973).

**12.** *E. g., Malley v. Manson,* 547 F.2d 25, 28 (2d Cir. 1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977); *United States v. Homer,* 545 F.2d 864, 867–868 (3d Cir. 1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2673, 53 L.Ed.2d 270 (1977); *United States v. Lewis,* 547 F.2d 1030, 1036–1037 (8th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977).

**13.** We have examined in context additional remarks attacked by appellant and are not persuaded that they merit special discussion.

**14.** *Walker v. United States,* 135 U.S.App.D.C. 280, 282, 418 F.2d 1116, 1118 (1969); *Gaither v. United States,* 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969); *Corley v. United States,* 124 U.S.App.D.C. 351, 352, 365 F.2d

instructions given by the trial court sufficiently diluted any prejudice.[15] That, we think, was the net of the matter here.

The Government's case against appellant was strong indeed. Witnesses for the prosecution testified that during their surveillance, his activities indicated three drug transactions. With the aid of high-powered binoculars, police officers stated that they were able to ascertain the location of the drug cache, and even to make a tentative identification of the type of drug being sold. This information was accurate enough to guide them directly to the hidden drugs, and to other tangible proof of appellant's illicit trade—nearly $400 in small bills—seized from the trunk of the car. This is not a case in which the evidence is so paper-thin that even a slight error might raise doubt as to the integrity of the verdict.[16] Rather, the physical as well as the testimonial proof of the illegal operation was substantial and compelling.

Moreover, the trial judge's instructions to the jury provided at least some mitigation of any prejudice to the appellant which might have arisen from the prosecutor's closing remarks. The jurors were informed that final arguments of counsel were not evidence, and that only evidence admitted at the trial was to be considered in arriving at a verdict.[17] We do not suggest that judicial instructions are a cure-all for all errors,[18] but in the case at hand it seems clear that they were an ameliorative factor deserving of some consideration.

When we combine the limited force of appellant's challenge, the manifest strength of the case against him and the curative contribution of the judge's admonition to the jury, we feel able to say "with fair assurance" that the statements complained of were harmless and did not substantially sway the verdict.[19] This is not, then, an occasion on which reversal would be appropriate, and the judgment appealed from is accordingly

*Affirmed.*

---

884, 885 (1966); *Cross v. United States,* 122 U.S.App.D.C. 283, 285, 353 F.2d 454, 456 (1965); *Jones v. United States,* 119 U.S.App. D.C. 213, 214, 338 F.2d 553, 554 (1964); *McFarland v. United States,* 80 U.S.App.D.C. 196, 197, 150 F.2d 593, 594, *cert. denied,* 326 U.S. 788, 66 S.Ct. 814, 90 L.Ed. 478 (1945).

15. *Gaither v. United States, supra* note 14, 134 U.S.App.D.C. at 172, 413 F.2d at 1079; *Cross v. United States, supra* note 14, 122 U.S.App.D.C. at 285, 353 F.2d at 456.

16. *Jones v. United States, supra* note 14, 119 U.S.App.D.C. at 214, 338 F.2d at 554.

17. Tr. 380, 382–383.

18. See *King v. United States,* 125 U.S.App.D.C. 318, 331, 372 F.2d 383, 396 (1967).

19. See *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–1567 (1946).