Brian K. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–710.

District of Columbia Court of Appeals.

Argued Dec. 7, 1994.

Decided Feb. 13, 1995.

As Modified on Limited
Grant of Rehearing March 28, 1995.

Neal L. Thomas, appointed by this court, Washington, DC, for appellant.

Glenn L. Kirschner, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr. and G. Paul Howes, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FARRELL and KING, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

This is an appeal of a conviction on twelve counts arising from the robbery and murder of two cocaine dealers. Appellant asserts error in the admittance of coconspirator evidence, and due to improper prosecutorial statements involving (a) appellant's failure to testify; (b) facts not in evidence; and (c) the burden involved in impeaching a government witness. Finding no error, we affirm.

## I.

On June 14, 1990, appellant was indicted and charged with one count of conspiracy in violation of D.C.Code § 22–105a (1989); one count of first-degree burglary while armed in violation of D.C.Code §§ 22–1801, –3202 (1989); one count of assault with a dangerous weapon in violation of D.C.Code § 22–502 (1989); one count of armed robbery in violation of D.C.Code §§ 22–2901, –3202 (1989); two counts of first-degree murder while armed (felony murder-burglary) in violation of D.C.Code §§ 22–2401, –3202 (1989); two counts of first-degree murder while armed (felony murder-robbery) in violation of D.C.Code §§ 22–2401, –3202 (1989); one count of carrying a pistol without a license in violation of D.C.Code § 22–3204(a) (1989); one count of possession of a firearm during the commission of a violent or dangerous offense in violation of D.C.Code § 22–3204(b) (1989); one count of attempted subornation of perjury in violation of D.C.Code §§ 22–105, –2512 (1989); and one count of obstruction of justice in violation of D.C.Code § 22–722(a)(1) (1989). These charges arose out of a drug robbery and the resulting shooting death of two men on March 11, 1990.

A trial commenced on January 13, 1992. All counts were submitted to the jury in addition to two counts of the lesser included offense of second-degree murder while armed. Appellant was acquitted of the premeditated murder charges, but was convicted of the remaining charges.

The government presented evidence at trial demonstrating that Robert Price, Kenneth Lampkin and appellant stole seventeen ounces of cocaine and during the robbery killed the two cocaine dealers. Price testified that in early March 1990, he, Lampkin and Torrance Duckett discussed the possibility of robbing the two cocaine dealers. Later, during the detailed planning of the robbery, although Duckett was not present, appellant was included in the planning. After setting up a meeting with the victims, and on the way to the meeting place, Price asked Mike Williams to join the group. On the way, the group retrieved a nine-millimeter handgun from appellant's residence, and a shotgun and .357 pistol from Lampkin's home. Appellant was to carry the nine-millimeter, Lampkin the .357 pistol, and Price the shotgun. Mike Williams testified that appellant was one of the conspirators.

The four men then proceeded to rob the two cocaine dealers. Price heard gunshots as he was leaving the scene. He then fled the scene with appellant and Lampkin. Mike Williams, who had been waiting outside, fled when the shots rang out. The three men traveled to Duckett's house which was also where Price was living at the time. The three conspirators and Duckett went into Duckett's bedroom (also where Price slept) and Price put the guns under the mattress. The four men then divided up the stolen cocaine. Each of the conspirators took five ounces, and Price gave Duckett one ounce so that he could "get his car fixed." Appellant and Lampkin split the final ounce.

While dividing up the cocaine the conspirators made several statements. Price testified that somebody said "[s]omething about I bust him." Duckett testified that he was involved in the initial discussion regarding the robbery, but ultimately did not participate. He also testified regarding the three men arriving at his house, entering his bedroom, hiding the guns and dividing the co-

caine. Duckett testified that Lampkin said that "we just came from robbing somebody," and that Lampkin or Price said that "[w]e just robbed somebody at Park Chester." According to Duckett, one of the coconspirators also said that they killed "[t]he Panamanians," with Lampkin adding that they did so because "they saw their face." In addition Duckett testified that appellant "said we just now killed somebody."

In addition, an officer testified regarding appellant's arrest. On that day appellant made a statement which was recorded by the police. A portion of that statement was played for the jury in which appellant stated that on the night of the killings he was at home with his girlfriend. He stated that he remembered being home because he was sick on that day. Among the other evidence was a nine-millimeter bullet and two slugs consistent with a .357 caliber weapon.

1. Appellant contends that the prosecutor's closing argument included impermissible references to appellant's election not to testify. However, included in the government's evidence were several pretrial statements made by the appellant. Among these statements were admissions appellant made while the conspirators divided the cocaine, statements he made in response to his girlfriend's query as to whether he had been involved in the crime, statements regarding what he agreed to tell the police regarding the crime, statements he made to the police denying his involvement and providing an alibi, and statements to his girlfriend urging her to give certain testimony to the grand jury regarding his whereabouts on the night of the offense. During closing argument the prosecutor referred to these pretrial statements. A careful review of the record and the prosecutor's comments reveals that they were not "manifestly intended" to comment on appellant's election not to testify. *See Brewer v. United States*, 559 A.2d 317, 322 (D.C.1989), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990) (stating the test as " 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be comment on the failure to testify' " (quoting *Byrd v. United States*, 364 A.2d 1215, 1218 (D.C.1976))). Rather, they are plausibly viewed as comments on the inconsistencies and untrustworthiness of appellant's out-of-court statements exculpating himself. Therefore, no error occurred.

Appellant's further claim of error involves the prosecutor's statements urging the jury to view appellant's conflicting pretrial statements regarding his whereabouts at the time of the offenses as demonstrating his consciousness of guilt. These

## II.

▮▮▮ Appellant makes the following four arguments on appeal:

1. The court committed reversible error in admitting hearsay evidence adduced by the government in the form of out-of-court statements by co-conspirators;

2. The trial court committed reversible error in failing to grant a mistrial following the prosecutor's improper comments on appellant's failure to testify;

3. The prosecutor argued facts not in evidence by incorrectly suggesting that statements by defendant showed a consciousness of guilt; and

4. The prosecutor misstated the law by suggesting that appellant bore the burden of impeaching the government's witness "beyond a reasonable doubt...."

We find no merit to arguments two, three and four.[1] Although we ultimately find no

statements include appellant's response to his girlfriend's query of whether he was involved in the crime, his statement to the police regarding his alibi, and the testimony he asked his girlfriend to give regarding his whereabouts during the night in question. After reviewing the record we find that most of the prosecutor's statements were not improper. Whether one describes appellant's pretrial statements as inconsistent or not entirely consistent is harmless error. When combined with the trial court's curative instruction regarding one of the prosecutor's statements we find no reversible error.

Finally, appellant argues that the trial court should have intervened *sua sponte* when the prosecutor, addressing in summation various discrepancies the defense had highlighted regarding the testimony of government witnesses, stated the following:

> Now, ladies and gentleman, you heard about discrepancies. There is one of the bigger ones and you'll hear about it, you heard about it in cross-examination [of Price]. Did you pick up Mike [Williams] when you had both [appellant] and Kenny [Lampkin] in the car or did you just pick up Mike when you had one of them in the car, or just Kenny in the car.
> Ladies and gentlemen, is that something for which you can say that's enough doubt? That that's beyond a reasonable doubt that [appellant] didn't do it?

No objection was made and thus review is subject to plain error. *Dixon v. United States*, 565 A.2d 72, 78 (D.C.1989). The prosecutor, although incorrectly stating the burden of proof, had correctly stated the burden of proof to the jury earlier in his closing remarks. When considered in the context of the prosecutor's entire

error in regard to the court's admission of the hearsay evidence by coconspirators, we consider the argument of appellant worthy of further analysis.

■ Appellant asserts that the trial court erred in admitting testimony by Price and Duckett relating to statements made by several of the coconspirators in Duckett's bedroom during the dividing of the cocaine, because the court made no finding—and could not properly have found—that the statements were made in furtherance of the conspiracy.[2] Among these statements were Price's testimony that someone said, "Something about I bust him," and Duckett's testimony that Lampkin stated, "we just came from robbing somebody," and when asked why, further stated that Lampkin said, "cause they said they saw their face."

■ A coconspirator's out-of-court statements may be admitted if the prosecution establishes that a conspiracy existed, the defendant had a connection with the conspiracy, and the coconspirator made the statements during the course of and in furtherance of the conspiracy. *Butler v. United States*, 481 A.2d 431, 439 (D.C.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985).[3] To be admissible, the statements must satisfy both the "in the course of" and the "in furtherance of" requirements. On the other hand, once the statements are found to have been made in the course of the conspiracy,[4] the test for whether they furthered an objective of the conspiracy is not

an onerous one. *See* 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 801(d)(2)(E)[01], at 801–313 & n. 44 (1994) (citing cases). The limitation is usually expressed in terms of an exclusion of statements that were casual conversation, idle gossip, or mere narratives of past events. *See United States v. Tarantino*, 269 U.S.App. D.C. 398, 426, 846 F.2d 1384, 1412 (1988) ("a 'conspirator's casual comments to people outside or inside the conspiracy'" are not in furtherance of the conspiracy (quoting *United States v. Snider*, 720 F.2d 985, 992 (8th Cir.1983), *cert. denied*, 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984)), *cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988); *United States v. Haldeman*, 181 U.S.App.D.C. 254, 333, 559 F.2d 31, 110 (C.A.D.C.1976) ("mere narratives of past events are not admissible hearsay statements"), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

This case presents an issue of just what acts and statements qualify as being "in furtherance of the conspiracy." Appellant contends that the conspiracy was over and the only remaining step was the division of the seventeen ounces of cocaine. He argues that the hearsay statements in no way furthered that remaining objective—the division of the cocaine. He further argues that the trial court made no finding regarding the "in furtherance of" requirement. The government argues, to the contrary, that the conspiracy was not over because the spoils of the crime

---

closing argument there is no plain error. *See Golsun v. United States*, 592 A.2d 1054, 1059 (D.C.1991) (ruling that inartful, confusing, and potentially improper comments suggesting that appellant's "presumption of innocence should have slipped away" and questioning "whether there was any evidence 'that would indicate [appellant] is innocent of anything'" does not constitute plain error) (quoting trial transcript). Furthermore, the trial judge later instructed the jury correctly on the burden of proof and the jury is presumed to follow the court's instructions. *Dixon, supra*, 565 A.2d at 79.

2. Appellant also alleges error in the admission of Price's hearsay testimony regarding the phone conversation between Price and Lampkin, and appellant and Lampkin, during which they agreed to tell the police nothing about the robbery and murders. Price testified that when he

spoke to Lampkin he was told to tell the police nothing. Defense counsel objected and the trial court agreed that the proper foundation had not been established for an adoptive admission. The testimony was never struck by the court or a curative instruction provided. However, the prosecutor was allowed to approach the subject in a different line of questioning. Price testified that he *told appellant to tell the police nothing* and that appellant responded that "[h]e agree[d]." Thus, no prejudice resulted from the earlier improperly admitted hearsay testimony.

3. In *Butler* this court adopted FED.R.EVID. 801(d)(2) (co-conspirator statements) as controlling in this jurisdiction. 481 A.2d at 439.

4. Statements made after the conspiracy has ended are not admissible. *Fiswick v. United States*, 329 U.S. 211, 217, 67 S.Ct. 224, 227–28, 91 L.Ed. 196 (1946).

still needed to be divided by the conspirators. And it asserts that the statements made to Duckett, in the course of dividing the spoils and giving him a share of the cocaine, are reasonably viewed as an effort to take him into their confidence and assure his cooperation in concealing the fact of the crimes and, indeed, the weapons.

■ Many courts have recognized that the division of the spoils is a continuing part of the crime, including conspiracy. *See, e.g., United States v. Hickey,* 596 F.2d 1082, 1090 (1st Cir.) (essential to the robbery "was the need to divide the money and to escape with it undetected"), *cert. denied,* 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 70 (1979); *State v. Rivenbark,* 311 Md. 147, 533 A.2d 271, 276 (1987) ("[b]efore the conspirators can be said to have successfully attained their main object, they must often take additional steps, *e.g.,* fleeing, or disposing of the fruits and instrumentalities of crime. Such acts further the conspiracy by assisting the conspirators in realizing the benefits from the offenses which they agreed to commit"); *Commonwealth v. Smith,* 511 Pa. 343, 513 A.2d 1371, 1375 (1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987) ("[f]light from the crime scene and division of the robbery proceeds were certainly parts of a common design to carry out the robbery"). Appellant, therefore, cannot tenably argue that the statements to Duckett were not made in the course of the conspiracy—defined to include the division of the spoils. Once that is conceded, however, the government's burden of proving admissibility is not great, as discussed earlier. So long as statements to a nonconspirator "can reasonably be interpreted as encouraging [that person to] advance the conspiracy" or serve to enhance the "person's usefulness to the conspiracy, then the statement is in furtherance of the conspiracy and may be admitted." *Tarantino, supra,* 269 U.S.App.D.C. at 426, 846 F.2d at 1412. *See also State v. Couture,*

218 Conn. 309, 589 A.2d 343, 351 (1991) (statements made while transporting stolen goods to safe hiding place were in furtherance of conspiracy); *State v. Pelletier,* 209 Conn. 564, 552 A.2d 805, 812 (1989) (statements made to wife "whose house was being used to hide the stolen property and whose further cooperation was obviously necessary ... helped to maintain the cohesiveness of the conspiracy thereby furthering its purpose"); *Commonwealth v. Smith, supra,* 513 A.2d at 1375 (statements were "in the furtherance of a conspiracy, for [they] were made in the course of flight from the scene of the crime and in the concurrent course of dividing up the proceeds of the robbery").

In this case, the coconspirators took refuge in Duckett's house and, indeed, concealed the weapons in his bedroom. It is reasonable to infer that, by giving him a portion of the spoils and (in response to his questions) informing him of what had happened, they sought to assure his ongoing cooperation.[5] The fact that they gave him the ounce of cocaine ostensibly to enable him to fix his car is, of course, not inconsistent with this motive. Bringing Duckett within their confidence and rewarding him served the conspirators' purpose of concealing the crime and the weapons.[6]

Appellant's argument that the trial judge made no finding that the statements furthered the conspiracy is answered partly by the fact that appellant himself, in objecting to the admission of the statements, never differentiated between the "in the course of" and "in furtherance of" requirements for admissibility. Appellant's counsel argued:

> Asportation ... is over once they get there, certainly it's not continuing once they're inside sitting in Mr. Duckett's bedroom, asportation is clearly ended.

The fact that they are now dividing the spoils is not an element of the offense, it's not in furtherance of the conspiracy. It's

---

5. Although Duckett was not charged as a member of the conspiracy, he had been involved in early discussions of the possibility of robbing the two cocaine dealers.

6. We do not decide whether any of the abovementioned acts—stashing the guns in the apart-

ment, dividing up the drugs, or simply giving Duckett a portion of them—standing alone, or in combination with one of the other factors, would be sufficient to establish that the simultaneous conversation was in furtherance of the conspiracy.

simply reaping the benefits of that criminal activity, I suppose.

As appellant argued principally—and erroneously—that the statements were made after the conspiracy was completed, it is difficult to fault the trial judge for not having expressly considered whether the statements also furthered an objective of the conspiracy. In any event, we think that finding is implicit in the judge's decision to admit the statements, made only after full discussion with counsel of the requirements for admission set forth in *Butler, supra,* and the federal rule. At the same time, in future cases the trial judge should make express findings addressing both requirements.

We find no abuse of discretion in the judge's ruling admitting the conconspirator statements. *See United States v. Wolff,* 839 F.2d 1387, 1393 (10th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).[7]

Accordingly, the case is remanded so that the trial court may vacate those of appellant's convictions which have merged with others. In all other respects, the judgments of conviction are *Affirmed.*

---

7. We therefore do not reach the government's argument that any error in admitting the coconspirator statements was harmless in light of Duckett's testimony about appellant's own statements admitting that "we just now killed somebody" and had "just robbed somebody."